## Ford, Appellant *v.* Philadelphia et al. (Fidelity Philadelphia Trust Co., Appellant).

---

Argued October 30, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD and RHODES, JJ.

Henry I. Koplin, with him Michael A. Foley, for appellant No. 56.

Victor Frey, with him Philip A. Campbell, of Frey & Campbell, for appellant No. 190, appellee No. 56.

I. Jerome Stern, with him John J. K. Caskie, Assistant City Solicitors, and Francis F. Burch, City Solicitor, for appellee No. 190.

OPINION BY RHODES, J., March 2, 1942:

An action in trespass was brought by plaintiff against the City of Philadelphia to recover damages for injuries sustained by her as the result of a fall occasioned by a defective sidewalk. The city, the original defendant, by writs of scire facias under the Act of April 10, 1929, P. L. 479, as last amended by the Act of June 25, 1937, P. L. 2118, No. 428, 12 PS §141, brought upon the record, as additional defendants, the Fidelity-Philadelphia Trust Company and Albert Hart and Phyllis Hart, his wife. The city averred that the Fidelity-Philadelphia Trust Company was liable over in case of a recovery against the city for the reason that it owned and controlled the property abutting on said defective sidewalk, and was, as to the city, primarily responsible for the defect. As to the Harts, the city averred that they controlled, possessed, and had the right of possession of said premises, and were, as to the city, primarily responsible for the defect in question.

The Fidelity-Philadelphia Trust Company filed an affidavit of defense to the scire facias in which it admitted that it owned the property fronting on the defective sidewalk, but denied that it controlled the same or was primarily responsible, because, it averred, the Harts were in possession and control of the premises at

the time of the accident by virtue of a lease dated September 29, 1936, under which the Harts undertook to keep the sidewalk in good repair. The Harts in their affidavit of defense admitted that they were the tenants, but alleged that the Fidelity-Philadelphia Trust Company had assumed control of the defect.

At the conclusion of the evidence the tenants' motion for nonsuit was granted. The jury found in favor of the city, and for plaintiff against the owner. The owner's motions for judgment n.o.v. and for a new trial, and plaintiff's motions for judgment n.o.v. and new trial as to the city were refused. Judgments were entered on the verdicts. The owner has appealed (No. 56, October Term, 1941) from the judgment entered against it in favor of plaintiff, and complains of the refusal of its motions. Plaintiff by her appeal (No. 190, October Term, 1941) from the judgment entered in favor of the City of Philadelphia, the original defendant, seeks a new trial as to the city in the event that the owner's appeal is sustained. Both appeals will be disposed of in one opinion.

The facts in this case were comparatively simple, and under proper instructions were for the jury. Such difficulty as has arisen is due to the conflicting interests to be adjudicated in a single action.[1] There is no doubt, as argued by counsel for the original defendant, that if it was established at the trial that an additional defendant was the party liable to plaintiff the latter could have verdict and judgment against such additional defendant, and the jury would be permitted to render such a verdict under the Act of June 22, 1931, P. L. 663, §2, amending the Act of April 10, 1929, P. L. 479, 12 PS §141. *Huber Investment Co., to use, v. Philadelphia National Bank et al.,* 116 Pa. Superior Ct. 380, 382-384, 176 A. 751; *Boosel v. Agricultural Insurance Co. et al.,* 118 Pa. Superior Ct. 400, 403, 180 A. 21;

---

[1] See Goodrich-Amram, §2251-1 (Commentary).

*Rudman et ux. v. City of Scranton et al.,* 114 Pa. Superior Ct. 148, 154, 173 A. 892.

It is also true that if the original defendant, the city, was shown to have been negligent the plaintiff could have verdict and judgment against it; the city would then be entitled to a verdict and judgment against the additional defendant found to have been in actual possession and control of the premises, and liable over to the city for failure to maintain the sidewalk in proper condition. The city's responsibility is secondary; its duty was to see that the pavement was maintained in a condition safe for public travel. *Philadelphia v. Reading Co.,* 295 Pa. 183, 188, 145 A. 65; *Rudman et ux. v. City of Scranton et al.,* supra, p. 156; *Wright et ux. v. City of Scranton et al.,* 128 Pa. Superior Ct. 185, 192, 194 A. 10. It is generally recognized that a tenant is primarily liable if a sidewalk becomes defective while in the occupancy and control of the tenant resulting in injury to a third person, but that the landlord is liable for defects which exist at the time of executing the lease. *McLaughlin v. Kelly,* 230 Pa. 251, 256, 79 A. 552; *Briggs et al. v. Philadelphia et al.,* 316 Pa. 48, 51, 173 A. 316. In *Baxter v. Borough of Homestead et al.,* 120 Pa. Superior Ct. 182, 185, 182 A. 68, we said that the owner of a property in a city, in possession of the entire property, is primarily liable for a defective sidewalk in front of it, and that if the owner is out of possession because of having leased the entire property, his liability ceases, and the tenant is liable for injuries occurring to a third person because of a sidewalk defect. See *Philadelphia v. Merchant & Evans Co.,* 296 Pa. 126, 131, 145 A. 706; *Bruder v. Philadelphia et al.,* 302 Pa. 378, 384, 153 A. 725; *Briggs et al. v. Philadelphia et al.,* supra.

On the afternoon of January 23, 1938, plaintiff was walking eastwardly on the paved sidewalk along the north side of Greenway Avenue in the City of Philadelphia. In front of premises known as No. 5319 Greenway Avenue she sustained injuries when she stepped

into a hole fourteen inches in diameter and about three feet deep. Previously children at play had spread newspapers over the surface of the sidewalk including the hole. This prevented plaintiff from seeing the defect. A witness testified that she first observed the hole about January 14, 1938, and another testified that the defect had existed for a month prior to the accident. The city had actual notice of the dangerous condition of the pavement on January 18, 1938. There is no testimony in the record which indicates when the owner was notified by the city. However, a witness called on behalf of the city testified that on January 18, 1938, the owner requested an estimate of the cost of repairing the defect, that on the same day the witness examined the sidewalk and submitted an estimate to the owner, and that on the same evening he placed a lantern at the hole. This was maintained at night as a warning to pedestrians. On the nineteenth, the city issued a permit to the owner and a contractor to repair "concrete footway......at 5319 Greenway Avenue." It was four days later, January 23, 1938, that plaintiff was injured as a result of the defective sidewalk. Repairs to the sidewalk were first made the day after the accident. The Harts in their answer to the writ of scire facias admitted that they were tenants on the premises at No. 5319 Greenway Avenue at the time of the alleged accident. While there was sufficient evidence of a lease to the Harts, its provisions were not introduced in evidence.

In the present case the pleadings raised the issue as to the primary responsibility for the defective condition of the sidewalk at the time of plaintiff's accident. The tenants were prima facie primarily responsible for the defective sidewalk in front of the premises which they admittedly occupied as tenants, and it was reversible error for the trial judge to charge "that responsibility for that defect in the sidewalk primarily rested with the Fidelity-Philadelphia Trust Company, and, secondly,

with the city." The tenants would not be necessarily absolved from their responsibility by the voluntary assumption of their duty by another. It is the general rule that a tenant in possession always is, and the landlord may be, liable for injury to a third person arising from negligence. *Bears v. Ambler,* 9 Pa. 193, 194; *Morse et ux. v. Chessman,* 86 Pa. Superior Ct. 256, 260; *Fisher et ux. v. City of Philadelphia,* 112 Pa. Superior Ct. 226, 239, 170 A. 875; *Reading City v. Reiner,* 167 Pa. 41, 43, 31 A. 357. But if the owner in the case before us occupied and assumed control of the defective sidewalk, as alleged, notwithstanding the tenants' possession of the entire premises, a responsibility naturally followed. It would then be futile for the owner to assert that it would not be responsible for the condition which it took upon itself to correct.

Where a landlord is not bound to make repairs that become necessary during the possession of the tenant, if he assumes to do so, and neglects to perform his obligation, or, in performing it, if any injury is caused for want of skill in, or proper selection of, his workmen, he may be held liable therefor.

The trial judge should have charged the jury that the tenants were primarily responsible for the sidewalk defect as it occurred during the period of their actual possession, and that, if the jury found from the evidence that the owner had entered and assumed control of the defect prior to plaintiff's injury, it was also responsible; for then pro tanto both were in possession and control. See *Zisman, Ex'r, v. Duquesne City et al.,* 143 Pa. Superior Ct. 263, 270, 18 A. 2d 95. Even if the owner voluntarily assumed to repair the defective condition, although it was the duty of the tenants to do so, it would be liable on the theory of negligence if it left the part in a defective condition, or did the work so negligently as to cause injury to a third person. 32 Am. Jur., Landlord and Tenant, §769, p. 656; 36 C.J. p. 244, §957. The owner's duty to maintain his prop-

erty in such a condition that it shall not be dangerous to the public may be suspended, when in a legally permissible way, as by leasing the premises, he parts with his right to enter it and so loses his power to perform his duty to maintain it in a safe condition; but when he resumes control the reason for the suspension of his duty fails. See Bohlen, Studies in the Law of Torts, note, p. 210; *Appel v. Muller et al.*, 262 N. Y. 278, 186 N.E. 785, 89 A.L.R. 477.

A new trial must be granted, as there was basic and fundamental error in the charge of the court. This inures to the entire controversy, and the case will be restored to the same status as if no previous trial had been held. *Campbell v. National-Ben Franklin Fire Ins. Co.*, 123 Pa. Superior Ct. 274, 276, 187 A. 217; *Giles v. Ryan et al.*, 317 Pa. 65, 69, 176 A. 1.

The judgment against the Fidelity-Philadelphia Trust Company, and the judgment in favor of the City of Philadelphia are reversed; judgment of nonsuit in favor of Albert Hart and Phyllis Hart, his wife, is stricken off. The motions for a new trial of the plaintiff, Helen R. Ford, and the additional defendant, Fidelity-Philadelphia Trust Company, are sustained.