Howard LARSON, Appellee,

v.

Daniel V. STRAFF, Raymond Straff, Ind. and t/a Straff Brothers, Washington Hotel Garage and Dauphin Realty Co., Inc.

v.

Joseph PRAGER and Pearl Prager, Appellees,
Dauphin Realty Co., Inc., Appellant.

No. 14775.

United States Court of Appeals Third Circuit.

Argued April 23, 1964.

Decided Dec. 31, 1964.

As Amended on Denial of Rehearing Feb. 4, 1965.

See also D.C., 228 F.Supp. 952.

John J. O'Brien, Jr., Philadelphia, Pa. (Ralph P. Higgins, Philadelphia, Pa., on the brief), for appellant.

John F. Naulty, Philadelphia, Pa., for plaintiff-appellee, Larson.

Maurice M. Green, Philadelphia, Pa., for third-party defendants-appellee, Joseph Prager and others.

Before .KALODNER, FORMAN and SMITH, Circuit Judges.

FORMAN, Circuit Judge.

Howard Larson (Larson or appellee) sued Dauphin Realty Co., Inc. (Dauphin or appellant) and Daniel V. Straff and Raymond Straff (Straffs), trading as Washington Hotel Garage, in the United States District Court for the Eastern

District of Pennsylvania. Dauphin filed a third party action against Joseph Prager and Pearl Prager (Pragers). This appeal centers about alleged trial errors emanating from the four-party negligence action. Appellee, Larson, recovered an $86,000 damage award against Dauphin and the Straffs for injuries incurred while acting in the capacity of a business invitee on a portion of the premises owned by Dauphin. Judgment was entered in favor of the Pragers on Dauphin's third party suit.

The premises, at the time of the injury to Larson, were in the possession of the Straffs, as sublessees of the Pragers, who in their turn had taken a lease from Dauphin. Defendants Straffs are not appealing from the judgment adverse to them. Dauphin has appealed both from the judgment finding it negligent and from the judgment in favor of the Pragers. It has been Dauphin's unsuccessfully argued claim that any liability on its part is to be indemnified by the Pragers under a clause in the original leasing arrangement.

The salient facts, as recognized by the Trial Court, involving the four aforementioned parties to this litigation, are as follows: On January 14, 1958, Larson, an elevator repairman, was seriously injured when an outside third floor concrete platform onto which he had stepped collapsed. This platform was part of the premises known as the Washington Hotel Garage, operated by the Straffs, tenants pursuant to their sublease dated May 1, 1953. The Pragers had leased the premises from the Dauphin Realty Co. under a lease dated the same day. This original lease acknowledged the sublease to the Straffs from the Pragers. Both leasing arrangements provided that all repairs to the premises were to be made by the tenant with the exception of the roof, which Dauphin specifically agreed to maintain.

At the trial Larson argued that there were two grounds upon which Dauphin could be found liable. Larson succeeded in qualifying two expert witnesses who testified that the extent of disintegration of the iron braces which had supported the collapsed concrete platform indicated that the structure was defective prior to the May 1, 1953 leasing arrangements. Thus, Larson contended that it was the duty of the landlord (Dauphin) to abate the pre-existing hazardous condition prior to the leasing arrangements and the change of possession of the premises. Failing to fulfill this duty, Dauphin would be liable for injury arising from such negligence, even though it was out of possession at the time of the injury. This first proposed basis for defendant Dauphin's liability was complemented by a second ground.

Subsequent to the change of possession of the leased premises Dauphin voluntarily painted the iron base and protective railings of the platform, all plainly visible to the eye. Larson contended that such an activity evidenced fulfillment of a maintenance function, and thus, an assumption of control over the platform, which was subsequently to collapse. An improper performance of the maintenance function, argued the plaintiff, would permit a jury to find Dauphin liable.

Together with the Straffs, the jury did find defendant Dauphin liable, after a charge which indicated that either of the two aforementioned grounds could form a basis for finding that liability. The jury also exonerated the Pragers, as third party defendants, from liability on the indemnity clause in their leasing arrangement with Dauphin. Following the verdict, Dauphin moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial. Both motions were denied. The opinion of the District Judge[1] dealt with the issues raised by the motions, and it is a brace of objections substantially similar to those reviewed by the Trial Judge upon which we are now asked to rule. In logical order, those issues raised as error on appeal, are:

1. Larson v. Dauphin Realty Co., 224 F.Supp. 989 (E.D.Pa.1964).

I. Whether the evidence was sufficient to prove that the structure which collapsed beneath the plaintiff was defective prior to the date of the leasing arrangement and the transfer of possession from Dauphin Realty Co., through the lessees, to the tenants Straffs? Relevant to this issue is the question whether plaintiff's expert witnesses were properly qualified to testify on the subject of the deterioration of the angle iron supports of the platform.

II. Whether the Trial Court committed error in refusing to instruct the jury that if the pre-leasing defect were found to be discoverable by the tenant, the landlord out of possession would be exculpated from liability arising from such a pre-leasing defect?

III. Whether the action of Dauphin in painting portions of the iron work associated with the collapsed platform resulted in the assumption of control over and a duty to maintain the platform area, so as to keep it free from injurious defects?

IV. Whether the Pragers, as lessees, were liable over for the tort of the lessor, Dauphin, as was provided in the indemnity clause of their leasing arrangement?

## I

The Trial Judge in his written opinion disposing of defendant's post-verdict motions concluded that there was sufficient evidence from which the jury could have found that the platform which had collapsed was in a dangerous condition prior to the 1953 leasing arrangement. The jury obviously could have grounded that conclusion on Larson's expert testimony that the portion of the building involved in the accident was at least thirty-four years old in 1953 and that corrosion of the supporting angle irons after thirty years was sufficient to cause the platform to be dangerous. Dauphin argues that because these witnesses were not qualified to testify on the way corrosion takes place, their testimony that the corrosion of the iron platform supports was sufficient at the end of thirty years to cause the platform to be dangerous, should

have been disallowed. Dauphin also contends that the failure of these witnesses to pinpoint the time when the platform first became dangerous is indicative of their lack of expertise and is persuasive of their disqualification. Dauphin is aware, however, that an expert witness's qualifications are a matter for trial judges' discretion, but it argued that such discretion has here been abused.

It seems clear that the District Judge acted properly in allowing the testimony of Larson's experts. Witness Keast was a structural engineer, expert in design, inspection and fabrication of structural material for buildings. Witness Thompson had long been associated with the maintenance and inspection of structural steel, miscellaneous iron and ornamental iron. Despite the fact that these men were not knowledgeable on scientific causes of decay of metallic substances, their vast experience in the maintenance and inspection of such materials sufficiently qualified their general calculations concerning the development of the dangerous condition of the collapsed platform. For the same reason, Dauphin's contention, that the vagueness of the expert testimony relative to the time of the existence of the danger made it impossible for the jury to decide that the danger existed prior to May 1, 1953, the date of the leasing, is unacceptable. Contrary to this view, we feel, as did the Trial Judge, that the jury could draw reasoned conclusions from the presented expert testimony.

As the gravamen of Dauphin's contention that there was insufficient evidence from which the jury could have found that the platform was in a dangerous condition prior to May 1, 1953 was the lack of qualification of the expert witnesses, and as we have found these witnesses properly qualified, Dauphin's attack on the sufficiency of the evidence supporting the factual finding of the pre-existing defect must fail.

## II

Having determined that the jury could have concluded from the evidence that a

pre-leasing defect did exist, the ultimate question necessary to the application of the theory of a pre-existing defect as a basis for landlord liability centers about the relative duties of landlord and tenant towards rectifying the hazard and protecting prospective invitees. The instructions to the jury on this point in no way attempted to explain properly the relationship between the landlord and tenant. As will be demonstrated in the course of this opinion, the one instruction relating landlord and tenant responsibilities was inaccurate in the light of controlling Pennsylvania law. That instruction was as follows:

"In this case plaintiff claims that it was due to both the negligence of the tenant and the negligence of the landlord, and it is his burden to convince you of that. *If you should find that both the tenant and the landlord were negligent, then you could find against both of them.* If you find only the tenants were negligent, why, then you would find against them. On the other hand, if you found that only the landlord was negligent and his negligence caused the injuries to Mr. Larson, then you could find against them. *So you could find against either of them or both."* (Emphasis added.)

With the exception of this instruction, the Trial Judge, in effect, isolated the landlord, and viewed his actions apart from those of the tenant, contrary to the instructions requested by Dauphin.[2] With this as the approach, it is understandable how both the landlord's liability is found, and the tenant's unquestioned.[3] But, as will be subsequently discussed, this is the pitfall into which the Trial Court has fallen.

■ The jury was in effect instructed that if the landlord should have known by a reasonable inspection of his property at the time of the leasing arrangement that some condition was likely to be dangerous, and knowledge of that condition was neither imparted to the tenant nor were repairs undertaken, then such actions form a basis of landlord liability.[4] Such

2. *Point for Charge No. 15*
 "Under all the evidence and under all the law, you cannot render a verdict against the defendant, Dauphin Realty Company, unless you find that there was a hidden defect in the balcony prior to May 1, 1953, the date of the lease, and that Dauphin Realty Company had actual notice of the hidden defect or that reasonable inspection would have disclosed the hidden defect and the tenants, Straff Brothers and Pragers, could not have discovered the hidden defect by a reasonable inspection of their own."
 *Point for Charge No. 20*
 "Under all the evidence and under all the law, if you find that a defect existed in the balcony prior to May 1, 1953, the date of the leases, and that a reasonable inspection by the tenants would have revealed the defect, then you must render a verdict in favor of the defendant-owner, Dauphin Realty Company."

3. See Larson v. Dauphin Realty Co., supra note 1, at 991, where the Trial Judge indicated that the tenants Straffs' liability in this matter is unquestioned. The language of the Trial Judge throughout his opinion indicates that a jury would have no difficulty in finding tenant liability, along with concurrent landlord liability.

4. The Trial Judge's approach is reflected in the following excerpts from his charge to the jury:
 "Then you go to the question of the landlord. Should the landlord have known at the time he rented to the Pragers and they almost immediately sublet to Straff, should he have known at that time by a reasonable inspection of the property that this catwalk was dangerous, . . . should he have known at that time that he was renting to the Straffs something which was likely to be dangerous if it were not properly maintained and repaired? And in such a case should he have notified the Straffs? But more importantly, should he have taken steps himself to see that innocent third parties coming on there were not subject to the injuries which the plaintiff was in this case?"
 * * * * *
 "That is what we call generally in the law an indemnity agreement. But the law forces the landlord to go further, and under the law that provision

an instruction stems from a misconception of the governing Pennsylvania law, reflected both in the Trial Court's use of precedent in its opinion and in appellee Larson's citation of cases in his brief before this court.

 One of the leading cases which articulates the controlling Pennsylvania law is Harris v. Lewistown Tr. Co.,[5] where an invitee of a tenant was injured on premises demonstrated to be defective prior to the leasing arrangement. The Pennsylvania Supreme Court held that the landlord out of possession was not subject to liability to a person on the premises in the tenant's right because the defective condition was not hidden and could have been discovered by the tenant. The theory behind this rule is that under such circumstances the tenant is in a position to protect himself and his invitee. Barring an agreement to the contrary a tenant takes leased property as he finds it, with all existing defects which he knows or can ascertain by reasonable inspection.[6]

The Trial Court's error is evident in its use of precedent. Citing Greco v. 7-Up Bottling Co. of Pgh., 401 Pa. 434, 446, 165 A.2d 5, 10 (1960), the following is quoted:

" * * * 'But the duty of reasonable care and diligence may in certain circumstances impose something more than a mere cursory observation. It is clear that landowners have a duty to correct or warn business visitors or invitees not only of defects which are obvious or observable but also those discoverable by a proper or reasonable inspection. * * * ' " [7]

Both the *Greco* case on which the Trial Judge relies and the cases cited by *Greco* in support of the quoted proposition are clearly distinguishable. In *Greco*, the landlord had actually assumed control over a portion of the premises subsequent to the leasing arrangement. The plaintiffs were hired by the landlord to paint exterior window frames. The frames were rotted, gave way under the pressure of the plaintiffs' ladder, and injury occurred. The theory of liability in *Greco* was in no way connected with this discussion of the first of our two theories of liability namely, the extent of the liability of a landlord out of possession who, after entering into a lease, has *not* assumed control over a dangerous condition which existed prior to that leasing arrangement. In the instant case, the question of the control assumed by the landlord through his painting of a portion of the iron work associated with the collapsed platform is clearly separate and distinct from the theory of liability grounded on the pre-existing defect. The failure of the Trial Court to segregate the two theories has accounted for the improper use of the *Greco* case as support for finding landlord liability based purely on the defect existing prior to the leasing arrangement.

The cases cited in *Greco* support the proposition for which it stands. But, in no way are they dispositive of our present problem. Blasi v. Bonnert,[8] and Miller v. Hickey,[9] were situations in which the possessor of land had never entered into a leasing arrangement, situations in

---

would not cause liability on the Pragers and in favor of the landlord if when the Pragers took possession there was some defect there of which they were unaware. (Emphasis added.)

"In other words, if the landlord knows of a defect in the premises, or should by the use of ordinary care know of such a defect, then it is his duty to notify the tenant so that the tenant will not obviously entrap himself into liability for a lawsuit for something of which he has no knowledge when he executes the lease."

5. 326 Pa. 145, 191 A. 34 (1937).

6. See cases cited in Harris v. Lewistown Tr. Co., supra note 5, at 149 n. 2, 191 A. at 36 n. 2.

7. Larson v. Dauphin Realty Co., supra note 1, at 991.

8. 186 Pa.Super. 179, 142 A.2d 752 (1958).

9. 368 Pa. 317, 81 A.2d 910 (1951).

which complete control over the property was exerted by the landowner. Coradi v. Sterling Oil Co.[10] presented a fact pattern similar to *Greco*. The defendant-landowner, who was out of possession, assumed partial control through the hiring of business invitees for the purposes of repairs. Such a fact pattern is not dispositive of the initial question of liability now being considered. Philadelphia Ritz Carlton Co. v. Philadelphia [11] involved injuries arising from the bursting of a water main. Appellee Larson suggests that cases of similar nature, involving injuries from defective sidewalks, dispose of the legal problem at hand.[12] Such cases were discredited in Harris v. Lewistown Tr. Co., where it was pointed out that the doctrine of condition amounting to nuisance does not apply as between landlord and tenant.[13] A post-Harris case has also clearly enunciated the distinguishing characteristics. In Knickerbocker v. Scranton,[14] the court segregated injuries arising from defects outside the leased premises and concluded both that the rules which determine the duties of a landlord to persons inside the premises are not the same as those which determine a landlord's duty to persons outside the premises and that the theories supporting the rules are different. Appellee, Larson, relying on such cases, has failed to present persuasive authority in support of the Trial Court's action. The authorities offered both by the Trial Court and by the appellee in justification for the delivered jury charge are clearly inapposite.

Cases following Harris v. Lewistown Tr. Co. reaffirm and follow its mandate. For instance, Hayden v. Second Nat. Bank of Allentown emphasized the rule of landlord non-liability and its exceptions: [15]

"* * * [A] landlord owes no duty to persons coming upon the premises for conditions present at the time of the tenant's entrance. To this rigid rule of nonliability there are but two exceptions: (1) When the landlord conceals or fails to disclose dangerous conditions of which he has knowledge and of which the tenant is unaware and cannot be expected to discover, and (2) where the landlord, who knows or should know of dangerous conditions, leases premises for a purpose involving the admission of many persons and has reason to believe that the tenant will not first correct the conditions. * * * "

*Hayden* involved a public garage, as does the case at hand. The Pennsylvania Supreme Court underlined the fact that it did not consider such a garage as falling within the exception to non-liability relating to premises admitting many persons.

Another case supporting our present approach is Wilson v. Lamberton,[16] an opinion based on facts similar to those on appeal here and one which approves the aforementioned *Harris* case. In *Wilson*, Judge Kalodner, speaking for this court, made explicit the fact that the question of what is or is not reasonable inspection is for the jury. The Trial Court has referred explicitly to Judge Kalodner's statement in *Wilson*. There is further language in the opinion of the Trial Judge which might indicate that the question of reasonable inspection had been properly submitted to the jury. He says:

"* * * The landlord Dauphin had reason to believe that the Pragers would make no inspection of the premises since they immediately

10. 378 Pa. 68, 105 A.2d 98 (1954).

11. 282 Pa. 301, 127 A. 843 (1925).

12. E. g., McLaughlin v. Kelly, 230 Pa. 251, 79 A. 552 (1911); Kelly v. Horn, 173 Pa.Super. 603, 97 A.2d 833 (1953).

13. Harris v. Lewistown Tr. Co., supra note 5, at 153, 191 A. at 34.

14. 344 Pa. 317, 320, 25 A.2d 152, 153 (1942).

15. 331 Pa. 29, 31, 199 A. 218, 219 (1938).

16. 102 F.2d 506 (3 Cir. 1939).

sublet to the Straffs. Under these facts it was a jury question whether the landlord should have taken steps to uncover and correct this dangerous condition to prevent injury to a *business visitor* such as the plaintiff. * * * " [17]

While the Trial Court recognized in its opinion the force of Wilson v. Lamberton, appropriate instructions, rejecting joint landlord and tenant liability based on a pre-existing defect, were not given. Such instructions should have indicated to the jury that if they found that either of the tenants, be it the Straffs or the Pragers, could have located the defect through a reasonable inspection, then even on the theory of pre-existing defect, the tenant in possession, rather than the landlord, would be held liable. It would also have been appropriate to charge that if the landlord should have known of the defect which a tenant's reasonable inspection could not have been expected to have revealed, this would place liability squarely on the landlord out of possession. In such a circumstance no theory of pre-existing defect could place a duty of warning or repair on the tenant. However, the Trial Court never made explicit the relationship between the landlord's and tenant's responsibilities. The jury failed to receive proper instructions on the law. Such instructions were suggested by defendant Dauphin. This omission constitutes error.

■ Upon remand and new trial the court must be explicit in submitting the foregoing instructions to the jury. One other consideration is also of utmost importance. As previously mentioned, Judge Kalodner pointed out in Wilson v. Lamberton that the question of what is or is not reasonable inspection is normally for the jury. But, if the Trial Judge determines that plaintiff Larson's testimony itself indicates that a reasonable inspection could have been made by him, but was not, such question then becomes one of law and a determination on

this issue adverse to the plaintiff follows. Jury consideration on this issue is then precluded.[18]

### III

■ Dauphin has also objected to the Trial Judge's instructions to the jury concerning the second basis upon which its liability could have been found. It is Dauphin's position that its painting of portions of the iron work associated with the platform was merely decoration, not maintenance, and that it never assumed control, after May 1, 1953, of the structure, the collapse of which caused plaintiff's injury. Dauphin seeks, on two grounds, to demonstrate that the jury should not have been allowed to grapple with the question of whether the painting was for decoration or repair:

(a) It is alleged that the testimony of plaintiff's own witness positively shows that the painting was not repair. On recross examination counsel for Dauphin had the following interchange with Daniel V. Straff:

"Q. Your attorney, Mr. Bricklin asked you if Dauphin Realty painted and maintained this platform and you said yes. Do you recall that, a few moments ago?

"A. I don't remember the word 'maintain,' but I remember painting.

"Q. Well, for the purpose of this he said paint and maintain and you said 'yes.' Did you mean paint and maintain or did you mean just that they painted it, they put a couple of coats of paint on it?

"A. Well, it must have been painted because nobody maintained it."

Dauphin contends that the question of painting for decoration versus painting for repair should not have been allowed to reach the jury, because Mr. Straff's statements demonstrate that the painting was not for purposes of maintenance. We find this argument totally lacking in per-

---

17. Larson v. Dauphin Realty Co., supra note 1, at 992.

18. See Wilson v. Lamberton, supra note 16, at 507.

suasive qualities. First of all, the jury could infer from Mr. Straff's statements that Dauphin's painting of the iron work was merely ineffective as maintenance, rather than being a statement that Dauphin never assumed a posture of repair toward the platform. And secondly, even if the statement were flatly that Dauphin never assumed such a posture of repair, the jury had the right to disregard such an opinion and draw a contrary conclusion from other evidential circumstances.

■ (b) Dauphin further contends that a proper application of Pennsylvania law would remove the question of painting for decoration versus painting for maintenance from jury consideration. Coradi v. Sterling Oil Co.[19] is relied upon by Dauphin. In that case, a steel pole had been painted several times by the defendant landlord. Plaintiff was standing on a ladder which was leaning against the pole when the pole suddenly fell from internal corrosion, and plaintiff was injured. In sustaining the lower court's judgment notwithstanding the verdict, the Pennsylvania Supreme Court said the following in Coradi:

"* * * The trouble with plaintiff's case is that defendant never made or undertook to make or was obligated to make repairs to the steel pole—at best for plaintiff all defendant did was to paint the pole." [20]

Despite the fact that Dauphin has raised a number of objections to the Trial Court's ignoring the result in Coradi, one basis for distinction between Coradi and the instant case, as articulated by Judge Wood, has not been sufficiently rebutted by Dauphin, namely, the latent defect in Coradi, an internal rusting of the pipe was undiscoverable by a reasonable inspection, while in the case at hand the jury could have found that a reasonable inspection by

Dauphin would have uncovered the latent defect. We choose not to upset Judge Wood's use of discretion as to this matter.

Deciding this issue in such a manner moves us to the question of the extent of Dauphin's assumed control over the platform area through its painting the iron work. On this point, we are constrained to agree with Dauphin that an explicit charge concerning the consequences of a finding that the painting could be considered repairs and maintenance was necessary. Though not explicitly offering a proper instruction, Dauphin did suggest to the Trial Court a number of times that instructions on control were desirable. All the Trial Court instructed was that if the jury would find that Dauphin's painting amounted to repair, then Dauphin would be liable. Although the Trial Court's instruction was not improper as far as it went, as in our previous discussion concerning the allocation of liability for the pre-existing defect, an instruction on the relationship between landlord and tenant responsibilities was not forthcoming. Here again the jury could find license for a determination of joint landlord and tenant liability. In this we find error, as we shall now demonstrate.

■ It is clear that there have been circumstances, documented by the Pennsylvania cases, in which joint liability of lessor and lessee to a plaintiff has been found.[21] These cases, however, have all involved injuries to persons on public ways (sidewalks) abutting the premises of the liable lessors and lessees, cases with facts identical to those we have found inapposite to our discussion in Section II above.[22] As pointed out there, the most persuasive case found dealing with the problem before us, Harris v. Lewistown Tr. Co.,[23] summarily dismisses a consideration of cases

19. Supra note 10.

20. Coradi v. Sterling Oil Co., supra note 10, at 71, 105 A.2d at 99.

21. Ford v. Philadelphia et al., 148 Pa. Super. 195, 24 A.2d 746 (1942) (injury

on abutting public way), and cases cited therein.

22. See text accompanying notes 12, 13 and 14 supra.

23. Supra note 5.

involving injuries on abutting public ways.

A comparison of two sections of the Restatement,[24] both of which are reflected in the Pennsylvania cases,[25] reinforces our view that for appropriate reasons the abutting public way cases, where joint liability has been found, are inapplicable here. Comment (a) to Section 378 of the Restatement,[26] dealing with an aspect of the liability of lessors to persons *outside* the leased premises, expounds the joint liability approach. Section 362 of the Restatement, however, in dealing with the liability of lessors of land to persons *thereon,* states the following:

"A lessor of land who, by purporting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has, *as the lessee neither knows nor should know,* made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sub-lessee." (Emphasis supplied.)

The emphasis we have laid on the phrase, "as the lessee neither knows nor should know," is to underline the Restatement's view that a lessor, through the gratuitous assumption of a duty to repair on the leased premises, can displace the lessee as the liable party, for that lessee "neither knows nor should know" that a dangerous condition exists.

In contrast, as indicated by the cogent reasoning in the abutting public way cases,[27] the lessee may not escape from

---

24. Restatement, Torts §§ 362, 378 (1934).

25. Section 362 is reflected and cited in Rubin v. Girard Trust Co., 154 Pa.Super. 257, 35 A.2d 601 (1943); Section 378 and Comment (a) thereof parallel the view in those cases cited in note 21 supra.

26. *"Comment:*
"a. The fact that the lessor has covenanted to repair the land or to keep it in a safe condition, does not relieve the tenant from his duty to persons *outside the land* to maintain it in safe condition. A person outside the land injured by an unreasonably dangerous condition which the performance of the lessor's covenant would have made safe, may recover against either the lessor or the lessee." (Emphasis supplied.)

27. The following cases and excerpts therefrom indicate the basis for the rule of joint lessor and lessee liability in cases of injury to third persons occurring on abutting public ways. In so reasoning, these cases make clear the distinction between liability for third party injuries upon leased premises and liability for such injuries occurring on abutting public ways.

In Morse v. Chessman, 86 Pa.Super. 256, 259–60 (1926), quoting from the federal case of Jacob Doll & Sons v. Ribetti, 203 F. 593, 595 (3 Cir. 1913), Judge Gawthrop had the following to say which enunciates the distinction we have noted:

" 'The defendant was a lessee and occupier of the building in question. As such he was in control thereof, and the law imposes upon such occupier a very positive duty to those using the highway upon which the building abuts to use the care requisite according to the circumstances to guard them against injury resulting from the condition of the premises or from what is being done in or about the same by the direction or permission or for the convenience and benefit of the occupier * * * is an absolute duty which he cannot shift.' "

In Fisher v. City of Phila., 112 Pa. Super. 226, 235, 170 A. 875, 878 (1934), cited in Ford v. Philadelphia, supra note 21 at 201, 24 A.2d at 749, as was Morse v. Chessman, supra, further emphasis is given to the distinction:

" * * * [A]n owner of property does not relieve himself—*so far as the public and the municipality are concerned*—of the responsibility of keeping the sidewalk in front of his property in good and safe condition * * *." (Emphasis supplied.)

And as clearly stated in Knickerbocker v. Scranton, supra note 14, at 320, 25 A.2d at 153:

"We have had occasion to consider the respective duties and responsibilities of owners and lessees where the complainants sought to recover for injuries occurring inside the premises to those who were at the time there by permission or license from the tenants: Harris v. Lewistown Tr. Co., 326 Pa.

his duty to the general public, even though the lessor has also assumed a duty thereto. For the maximum protection of the public, the law will not allow lessors and lessees to adjust their relative duties between themselves. But, when dealing with the question of liability for injuries to plaintiffs on leased premises, such considerations of maximum public protection evaporate. The injured plaintiffs' causes of action arise only because they are on the leased premises by right of the lessee. Thus, the adjustment of the relationship between a lessor and a lessee becomes an implied limitation on plaintiffs who have merely had sanction to enter the leased premises under the right of the lessee, howsoever that right may be limited by the lessor-lessee arrangement. In cases involving the public use of public abutting ways, no such limitation may be imposed, and joint liability may attach.

■ Therefore, in the present case, involving an injury to the plaintiff upon the leased premises, the jury should have been instructed that if the painting by Dauphin was not to be considered as repairs, then Dauphin, the landlord, had not assumed the requisite control over the platform area so as to place upon itself the duty of due care. Such control being absent and if such defect were discoverable by a reasonable inspection, the tenants would bear the brunt of sole liability. However, the jury should also have been informed that if it found the painting by Dauphin to be repairs, or an attempt at repairs, then the requisite control had been assumed by it, and on the legal ground of assumption of control by the landlord subsequent to the leasing arrangement, Dauphin, and not the ten-

ants Straffs, would be held liable. The failure to give such instructions constitutes error.

In one respect, however, we do not accept Dauphin's argument relative to the issue of control. It has argued that its control, over the premises, if found to exist, terminated at the close of its painting the platform iron work, and at the time of the accident no control was assumed and no liability can thus attach. Dauphin does, however, accept the proposition that a landlord out of possession who gratuitously and voluntarily undertakes to make repairs is liable to a third party if the repairs are negligently made. Dauphin overlooks the point that such a principle is not limited in time by the moment of actual physical repair. Such a theory would be absurd, as the third parties to be protected by the landlord's control could only be the actual repairmen themselves and no other invitees. Thus, we conclude that if the jury determines that Dauphin's painting constitutes repair, or an attempt at it, Dauphin has exhibited an intention to maintain control over the particular area involved and such control places sole liability on Dauphin for injuries arising out of these defective premises subsequent to the assumption of that control.

■ Before moving to the final area of discussion, the effect on Dauphin of the indemnity agreement with the Pragers, it is necessary to make absolutely clear the scope of this decision. Two bases of liability have entered into this case. One is founded upon the determination of a pre-existing defect, hidden or discoverable by a reasonable inspection. The other concerns the assumption of con-

145, 191 A. 34; but there is a difference in status between persons inside the premises and persons outside the premises. The rules applicable are not the same and the theories supporting the rules are different.

"Here plaintiff was injured outside the premises as affected by the reservation of the right to enter to make repairs. The injury was occasioned by a defect in the sidewalk abutting on the premises and set aside for the use of the public. A defect such as formed the basis of recovery here affected persons who, as part of the public, used the sidewalk and not those who entered the premises by virtue of any right created by the contract between lessor and lessee. The defect constituted a nuisance. *In fixing the responsibility as between lessor and lessee those facts must be kept in mind.*" (Emphasis supplied.)

trol over the platform, or lack of it, by Dauphin, after entering into the leasing agreement. Our desire to relate the two stems from the previously mentioned erroneously broad charges of the Trial Court. The following is a further illustration of the error at trial:

> " * * * Now, there is no question the tenant was in possession. He was there. If you find that he could have observed this by the use of ordinary care, then of course he is liable, there is no question about it."

Though the tenants Straffs have not appealed the judgment adverse to them, our discussion of Dauphin's liability reflects on the Straffs' liability.[28] We are forced to touch upon the issue, for the Straffs and Dauphin are inextricably related to the two bases of liability which control this case.

Initially, we have ruled herein that the jury could have found that the weakened iron platform supports constituted a defect existing prior to the 1953 leasing arrangement. We indicated, secondly, that explicit instructions were needed concerning the duty of the tenant to reasonably inspect the premises, and that if the jury could have found that such reasonable inspection could have revealed the latent defect, the jury, on this first ground, was obligated to exculpate the landlord from liability. Thirdly, relative to the second basis for a finding of liability—control over the defective platform—we have just indicated that a proper instruction relating the landlord and the tenant to the painting of the platform and control over the area would result in the finding of liability, on one, but not both of the defendants.

Therefore, a jury could find: (a) The latent pre-existing defect was discover-

able by the tenant, but that the landlord, had assumed control over the platform area at the time of the injury. Under such circumstances, the landlord's control would place sole liability on him and exonerate the tenant,[29] who was relieved of control by the landlord at a time prior to the accident. (b) A jury could find that the defect was discoverable by the tenant, relieving the landlord of liability on the ground of pre-existing defect. After such a determination, a jury could also find that the landlord by painting had not repaired, but had merely decorated a portion of the premises which collapsed. Absent the assumption of a duty to maintain, the jury would find the requisite control lacking upon which to direct liability onto the landlord. In such a situation, the landlord is totally free from liability. (c) Under proper instructions the jury could also reason in the following manner. The pre-existing defect was one not discoverable with a reasonable inspection by the tenant. Then regardless of which party, landlord or tenant, was in control of the platform area at the time of the accident, the landlord would be liable for undisclosed defects known, or which should have been known, to him, and the tenant would be relieved of liability therefrom.[30]

Such relationships must be made clear to the jury to assure due application of the law to the facts and a resulting properly supported conclusion.

## IV

The final issue raised by Dauphin concerns whether the lessees Pragers, as third party defendants, were liable over, under an indemnity clause in their leasing agreement, for any responsibility attaching to Dauphin. The Trial Court, in its opinion on Dauphin's motion for a judgment notwithstanding

28. A proper consideration of defendant Dauphin's liability by the jury at the new trial will necessitate a review of the relationship between defendant Dauphin and defendants Straffs. As the latter have not sought appellate relief, they will not be a party to a new trial. The judgment entered against them will stand, de-

spite the fact that in the jury's determination of defendant Dauphin's liability that body might conclude that defendants Straffs should have been free from liability.

29. See note 28 supra.

30. See note 28 supra.

the verdict or for a new trial, held that because Dauphin had had a judgment entered against the Pragers for nonpayment of rent prior to the accident, and because such nonpayment under paragraph 14(2) [31] of the lease constituted a breach of the lease terminating its operation, and its avoidance could not be saved by the payment of sums due or by other performance, no arrangement for indemnification could have existed at the time of the injury to Larson.

Dauphin attacks the Trial Court reasoning by arguing that paragraph 14(2) of the lease only sets forth the limitations on the lessees' rights under the lease upon the nonpayment of rent. Dauphin asserts that paragraph 21 [32] is dispositive of the issue and that that paragraph states that the lessor's remedies are cumulative and the exercise of one will not exhaust the others.

In reality, paragraph 14(2) relates to both the lessor's and lessees' rights upon the nonpayment of rent. Dauphin conveniently overlooks the title of paragraph 14, "remedies of lessor," in the formation of its argument. It is clear from the face of the paragraph that the lessor had to treat the lease as void upon lessees' nonpayment of rent, and that lessees could not avoid the forfeiture through performance of their contractual obligations or by the assumption of new duties. Paragraph 21 is also of no assistance to the lessor. Though the paragraph initially sounds in terms of a general statement on the cumulative nature of lessor's remedies, the reading of the paragraph as a whole indicates a reference merely to the various remedies that can be employed by lessor to recover rent due and owing. Paragraph 21 simply clarifies the fact that assumption of possession of the premises by the lessor does not cut off his other remedies against the lessee for back rent. Therefore, we approve the Trial Court's approach to the issue of indemnification of defendant Dauphin. A jury finding of Dauphin's liability in the new trial will be conclusive of the question of liability. As a matter of law, the third party defendants, Joseph and Pearl Prager, are not liable for indemnification of defendant Dauphin Realty Co. and the judgment of the Trial Court in their favor is affirmed.

The judgment against Dauphin, however, is reversed on the grounds previously discussed and this case is remanded to the United States District Court for the Eastern District of Pennsylvania for a new trial in conformity with our previously expressed views.

KALODNER, Circuit Judge (concurring in part and dissenting in part):

I concur in the affirmance of the judgment below in favor of the third-party defendants, Joseph and Pearl Prager. I also concur in the granting of a new trial to the defendant-appellant Dauphin Realty Co., Inc. for the reasons stated in Part II of the majority's opinion. I disagree, however, with the granting of

31. "This lease and the term hereby created shall determine and become absolutely void without any right on the part of the Lessee to save the forfeiture by payment of any sums due or by other performance of any condition, term or covenant broken; whereupon, Lessor shall be entitled to recover damages for such breach in an amount equal to the amount of rent reserved for the balance of the term of this lease, less the fair rental value of the said demised premises, for the residue of said term."

32. "All of the remedies hereinbefore given to lessor and all rights and remedies given to it by law and equity shall be cumulative and concurrent. No determination of this lease or the taking or recovering of the premises shall deprive lessor of any of its remedies or actions against the lessee for rent due at the time or which, under the terms hereof, would in the future become due as if there has been no determination, or for sums due at the time or which, under the terms hereof, would in the future become due as if there had been no determination, nor shall the bringing of any action for rent or breach of covenant, or the resort to any other remedy herein provided for the recovery of rent be construed as a waiver of the right to obtain possession of the premises."

 

a new trial for the reasons which the majority states in Part III of its opinion.

Part III of the majority's opinion concerns the trial judge's instructions to the jury with respect to the second basis of Dauphin's alleged liability, viz., its entry upon the leased premises to "repair" the platform and not merely to "decorate", viz., paint it. The majority has found these instructions to be erroneous under Pennsylvania law. I hold to the contrary. Since the case is to be tried again it is of critical importance that the jury be correctly instructed else this case will be here again.

In the instant case the trial judge properly instructed the jury that if it found that Dauphin had entered upon the premises only to decorate that it would not be liable but that if it entered upon the premises to make repairs then it could be liable for its failure to correct an existing defective condition, and that the jury could then hold both Dauphin and the tenant liable to the plaintiff. The majority erroneously subscribes to the view that the jury should have been instructed that the tenant was not liable if Dauphin had entered upon the premises to make repairs.

It states:

"The jury should have been instructed that if the painting by Dauphin was not to be considered as repairs, then Dauphin, the landlord, had not assumed the requisite control over the platform area so as to place upon itself the duty of due care. Such control being absent and if such defect were discoverable by a reasonable inspection, the tenants would bear the brunt of sole liability. However, the jury should also have been informed that if it found the painting by Dauphin to be repairs, or an attempt at repairs, then the requisite control had been assumed by it, and on the legal ground of assumption of control by the landlord subsequent to the leasing arrangement, Dauphin, *and not the tenants Straffs would be held liable.* The failure to give such instructions

constitutes error." (emphasis supplied)

The majority does not cite one case in support of its view.

It is clearly the law in Pennsylvania that a tenant in possession owes a duty to his business invitees to keep the leased premises in a reasonably safe condition or to warn of dangers thereon of which he knows or can ascertain by a reasonable inspection, and breach of that duty causing injury to the invitee will result in his liability. Greco v. 7-Up Bottling Co. of Pittsburgh, 401 Pa. 434, 165 A.2d 5 (1960); Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 130 A.2d 123 (1957).

The instruction given by the trial judge was consistent with the Pennsylvania law.