## Dauphin Realty Co. v. Straff

*John J. O'Brien, Jr.*, for plaintiff.
*James Conwell Welsh*, for defendants.
*David F. Binder*, for garnishee.

SPAETH, J., November 21, 1968.—

## NATURE OF THE CASE

Plaintiff, Dauphin Realty Co., Inc., and garnishee, Equitable Fire & Marine Insurance Company of the Phoenix of Hartford Group, have each moved for summary judgment against the other.

## FACTS

The facts are not in dispute, so that it is appropriate to dispose of the motions for summary judgment.

On May 1, 1953, Joseph and Pearl Prager leased from Dauphin Realty Co., Inc., premises known as the Washington Hotel Garage. The Pragers, on the same day, sublet the premises to Daniel D. Straff and Raymond Straff; the sublease was acknowledged by Dauphin in the lease between Dauphin and the Pragers. The Straffs took possession and were operating the garage under their sublease on January 14, 1958, when one Howard Larson, a business visitor, was injured when a concrete platform on which he had stepped collapsed.

Larson sued Dauphin and the Straffs in the United States District Court for the Eastern District of Pennsylvania. Dauphin joined the Pragers. The jury returned a verdict of $86,000 against Dauphin and the Straffs, and a verdict in favor of the Pragers.

The Straffs, by their carrier, Equitable Fire & Marine Insurance Company of the Phoenix of Hartford Group, settled with Larson and did not challenge the verdict against it. Dauphin challenged both verdicts: the verdict in Larson's suit against Dauphin, and in Dauphin's suit against the Pragers. It lost in the district court, and appealed to the United States Court of Appeals for the Third Circuit.

As to Dauphin's suit against the Pragers, the Court of Appeals affirmed. It appeared that some months before the accident, the Pragers had failed to pay Dau-

phin the rent due on the Pragers' lease with Dauphin, and that Dauphin had entered judgment against the Pragers for the rent. The district court and the court of appeals each held that this had terminated the lease. Since Dauphin's suit against the Pragers was based on an indemnity provision in the lease, the termination defeated the suit: Larson v. Straff, 340 F.2d 180, 191-92 (3rd Cir. 1965.)

As to Larson's suit against Dauphin, however, the court of appeals reversed the district court and awarded Dauphin a new trial. The trial judge had instructed the jury that it might find against Dauphin, or the Straffs, or both. The court of appeals held that the instruction was error.

It appeared that the concrete platform had collapsed because the iron braces that supported it were defective. Larson contended in his suit against Dauphin that the defect existed before May 1, 1953, when Dauphin had leased the premises to the Pragers and they had sublet them to the Straffs, and that Dauphin was liable to him because of this pre-existing defect. It also appeared that after the lease had been executed, and the Straffs had taken possession, Dauphin had painted the braces. Larson contended that this too made Dauphin liable to him. The court of appeals held that Larson's contentions might result in either Dauphin or the Straffs being held liable, but not both. After discussing the Pennsylvania law, the court said:

"Therefore, a jury could find: (a) The latent preexisting defect was discoverable by the tenant, but that the landlord had assumed control over the platform area at the time of the injury. Under such circumstances, the landlord's control would place sole liability on him and exonerate the tenant [footnote omitted], who was relieved of control by the landlord at a time prior to the accident. (b) A jury could find that the defect was discoverable by the tenant, relieving the

landlord of liability on the ground of pre-existing defect. After such a determination, a jury could also find that the landlord by painting had not repaired, but had merely decorated a portion of the premises which collapsed. Absent the assumption of a duty to maintain, the jury would find the requisite control lacking upon which to direct liability onto the landlord. In such a situation, the landlord is totally free from liability. (c) Under proper instructions the jury could also reason in the following manner. The pre-existing defect was one not discoverable with a reasonable inspection by the tenant. Then, regardless of which party, landlord or tenant, was in control of the platform area at the time of the accident, the landlord would be liable for undisclosed defects known, or which should have been known, to him, and the tenant would be relieved from liability therefrom [footnote omitted]": 340 F. 2d at p. 191.

Before Larson's suit against Dauphin was retried, Dauphin settled with Larson for $13,000.

Dauphin then filed a complaint in assumpsit against the Straffs in the Court of Common Pleas of Philadelphia County. Paragraph 7 of the complaint alleged:

Under the terms of the lease agreements as aforesaid [Dauphin's lease to the Pragers, and the Pragers' sublease to the Straffs], the defendants undertook to be responsible for and relieve the plaintiff from all liability to third persons of any kind or cause sustained on the demised premises.

The terms thus referred to were the same in each lease and were:

"Lessee also agrees to be responsible for and to relieve and hereby relieves Lessor from all liability by reason of any damage or injury to any person or thing which may arise from or be due to the use, misuse or abuse of all or any of the elevators, hatches, openings, stairways, hallways of any kind whatsoever which may exist or

hereafter be erected or constructed on the said premises, or from any kind of injury which may arise from any cause whatsoever on the said premises or the building of which the demised premises is a part, whether such damage, injury, use, misuse, or abuse be caused by or result from the negligence of Lessor, its servants or agents or any other person or persons whatsoever".

Because of these terms, Dauphin alleged, it was entitled to recover the $13,000 that it had paid Larson in settlement, and also counsel fees and other expenses incurred in defending against Larson's claim.

After a trial without a jury, a verdict was rendered in favor of Dauphin and against the Straffs for $23,774.24, Gold, P. J. The verdict was reduced to judgment, and Dauphin instituted an attachment execution proceeding against Equitable as the Straffs' carrier. It is this proceeding that is before the court.

## DISCUSSION

Equitable's motion for summary judgment will be granted, and Dauphin's will be denied.

In Equitable's policy to the Straffs, there was an exclusion as follows:

"This policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement except a warranty of goods or products".

The Straffs' liability to indemnify Dauphin is within this provision, for it was a liability assumed by the Straffs under their sublease, which was "any contract or agreement except a warranty of goods or products". Consequently, Equitable afforded no coverage, and cannot be held liable to Dauphin.

Dauphin has resisted this conclusion by arguing somewhat as follows: In the Federal litigation it was found by the jury, and the verdict was unchallenged by

the Straffs, that the Straffs were liable to Larson for negligence. Equitable's policy with the Straffs promised that Equitable would pay on behalf of the Straffs damages for such negligence. In the present action Dauphin is claiming on this promise by Equitable. Dauphin's action "is directly comparable to an action that Straff Brothers, themselves, may have instituted in assumpsit against the garnishee insurance company; if the garnishee insurance company had failed and refused to pay the claim of Larson on behalf of Straffs in the first instance": (Page 4 of Dauphin's brief.) And Dauphin goes on to argue that "It is unreasonable and unjust to conclude that the coverage afforded by the garnishee company herein is excluded merely because the insured Straffs entered into a lease with the plaintiff, Dauphin, to protect Dauphin against secondary liability because of claims instituted as a result of Straffs' primary liability due to negligence". (Page 6 of Dauphin's brief.)

This argument, however, only exposes the flaw in Dauphin's suit. When Equitable settled Larson's claim against the Straffs, it discharged its liability to the Straffs; and it had no liability to discharge to Dauphin. Whether there was a lease "to protect Dauphin against secondary liability" is irrelevant, because there was no case involving secondary liability. If there had been a case of secondary liability, Dauphin would recover; the Straffs would then be liable to Dauphin because of Larson's accident. But, as the opinion of the Court of Appeals shows, there was no secondary liability. Either the Straffs were solely liable to Larson, or Dauphin was. Because both the Straffs and Dauphin settled with Larson does not alter this fact; and because of this fact, the Straffs could be under no liability to Dauphin except under their sublease, which was a liability that Equitable excluded from its policy. No doubt the Straffs could have purchased, or Dauphin could have required them to purchase, an additional policy to

cover the liability thus excluded. Evidently, however, that did not occur.

ORDER

And now, November 21, 1968, the motion for summary judgment filed by plaintiff, Dauphin Realty Co., Inc., is denied. The motion for summary judgment filed by garnishee, Equitable Fire & Marine Insurance Co. of the Phoenix of Hartford Group is granted, judgment in its favor is entered, and the attachment execution proceeding is dismissed.