Greco *v.* 7-Up Bottling Company of Pittsburgh, Appellant.

436

Argued April 28, 1960.   Before BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

reargument   refused   November   23, 1960.

*George Y. Meyer,* with him *George I. Buckler,* and *Meyer, Darragh, Buckler & McDonnell,* for defendant, appellant.

*V. C. Short,* with him *Clem R. Kyle,* for additional defendant, appellant.

*Sanford M. Chilcote,* with him *Dickie, McCamey, Chilcote & Robinson,* for defendant, appellant.

*D. E. Harrington,* with him *James P. McArdle, Gene K. Lynch,* and *McArdle, Harrington & McLaughlin,* for plaintiff, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, October 10, 1960:

In a trespass action for personal injuries the court below, upon the plaintiff's motion and after a jury verdict against one defendant and in favor of the two other defendants, granted a new trial as to all three defendants and refused a motion for judgment n.o.v. filed by the defendant who had lost the verdict. This action of the court below is the basis of these three appeals.

On August 25, 1952, Sigmund Yahr owned a three-story building located at 5850 Ellsworth Avenue, Pittsburgh, a building which, at that time and during a seven year period prior thereto, was under lease to the 7-Up Bottling Company [herein called Bottling Company]. In February 1952, Yahr had entered into a contract with Harold S. Sauers, trading as Real Estate Maintenance Company [herein called Maintenance Company] to paint certain window frames on the exterior of the building and, pursuant to this contract, Albert Greco [plaintiff] and John Pappas, Maintenance Company employees, were at the time of accident—August 25, 1952—engaged in performing this work. At the time of accident Greco and Pappas were placing a thirty-six foot extension ladder against the sill of a window located on the third floor of the building, this window being approximately twenty-five feet above the surface of the ground. The ladder consisted of two eighteen-foot sections and, in order to reach this third floor window, it was necessary that one section be extended seven or eight feet above the other section. In so doing, Pappas held the

ladder with his back to the building and Greco, standing on the second or third rung from the bottom of the ladder, was manually pushing the extension upward. Greco alleges that, when the top of the ladder came in contact with the window sill, a piece of wood[1] and a cast iron sashweight became dislodged, fell to the ground and one or the other or both struck him on the head inflicting severe injuries.

Greco instituted a trespass action in the Court of Common Pleas of Allegheny County against Yahr and the Bottling Company and Yahr then joined the Maintenance Company as an additional defendant. At trial the jury returned a verdict of $15,000 in favor of Greco and against Yahr as well as verdicts against Yahr and in favor of the Bottling Company and the Maintenance Company. As to all three defendants the court below granted a new trial and refused Yahr's motion for judgment n.o.v. From these orders the present appeals were taken.

Yahr takes the position that he is entitled to judgment n.o.v. inasmuch as there was insufficient evidence upon which the jury could find that he, the owner out of possession of the premises, was guilty of any negligence. The Bottling Company contends: (1) that since Yahr, the building owner, without its knowledge arranged to have the Maintenance Company paint the exterior woodwork of the building, it, the tenant in possession, would not be liable to Greco, an employee of the independent painting contractor, by reason of any latent defective condition of the window frame; (2) that, inasmuch as the Bottling Company's liability was submitted under proper instructions to the jury and inasmuch as the jury absolved

---

[1] Described as the "left-hand side of the window frame", five and one-half feet in length, four to five inches in width and three-quarters inch in thickness.

it of any liability and held Yahr, the building owner, liable, the grant of a new trial as to the Bottling Company was an abuse of discretion; (3) the absence of one of Greco's trial counsel from the courtroom on two or three occasions during the trial did not justify the grant of a new trial. The Maintenance Company's position was that there was no evidence of any negligence on its part and that the court below abused its discretion in granting a new trial as to it.

The opinion of the court below set forth its rationale for the grant of a new trial: (1) the verdict of $15,000 was inadequate; (2) the absence on two or three occasions of Greco's chief trial counsel because of an engagement in the Federal court deprived Greco of the legal advice and counsel to which he was entitled; (3) the jury's verdict exculpating the Bottling Company was against the charge of the court and the evidence.

In considering these appeals the scope of our appellate review varies. Upon Yahr's appeal from the refusal of the court below to grant his motion for judgment n.o.v., the testimony must be read in the light most favorable to Greco, all conflicts therein must be resolved in his favor and he must be given the benefit of all facts and reasonable inferences therefrom deducible: *Kuhns v. Brugger*, 390 Pa. 331, 335, 135 A. 2d 395. However, in considering the appeals from the grant of a new trial, this rule does not apply (*Sherman v. Manufacturers Light & Heat Company*, 389 Pa. 61, 68 (footnote), 132 A. 2d 255 and cases therein collected).

### Greco v. Yahr

Yahr, the building owner, technically had been out of possession of this property for approximately seven and a quarter years. The Bottling Company's possession arose by virtue of two leases, the first whereof

granted a term from May 1, 1945 to April 30, 1951 and the second whereof granted a term from May 1, 1951 to April 30, 1954. Under the first lease, the Bottling Company was bound to "maintain at [its] own expense the premises and every part thereof in good repair . . ."; insofar as presently pertinent, Yahr was obligated to paint the exterior of the building and to "keep in good repair and condition the exterior part of the building, including but not limited to the foundation and other exterior portions, the roof, the sidewalks and the alley . . ." Under the second lease, the Bottling Company agreed to "maintain at [its] own expense the premises and every part thereof in good repair . . ." without exception; the lease also provided that Yahr should "not be liable for any injury or damage to [the Bottling Company] or to any person or to any property at any time on said premises or building from any cause whatever which may arise from the use or conditions of said premises or building . . ." and that Yahr had "let the premises in their present condition, and without any representation, by him or in his behalf as to their present or future condition which can affect the rights and obligations created by this [lease]" and that the Bottling Company would "repair and replace all broken windows throughout the building" On February 14, 1952[2] Yahr entered into a contract with the Maintenance Company for the painting of the exterior woodwork of the building for $387.[3]

---

[2] Yahr had submitted to a Pittsburgh bank an application for an increase in a mortgage loan and the bank had notified him, in writing, that, before such application could be considered, certain repairs, including the painting of the exterior woodwork of the building, had to be made.

[3] The specifications provided that the Maintenance Company would remove all old or scarred paint by wire brushing or scraping, putty all cracks and nail-holes, replace all window sashes

Pursuant to such contract, the Maintenance Company began work on Saturday, August 23, 1952, and on that date as well as on Monday, August 25, 1952—the date of accident—its employees, including Greco and one Pappas, were on the premises engaged in the painting work. As to the observability of any defective condition in the window frames there was considerable uncontradicted testimony: Sauers, owner of the Maintenance Company, stated that, aside from the need of paint, he could not observe any defects in the window frames; Schell, a Maintenance Company employee, testified that he observed nothing on his inspection previous to the performance of the work which indicated a defective condition of the window frames; Greco, having painted five windows on the same side of the building, one of which was only ten feet from this particular window, testified he observed nothing which indicated a defective condition of this particular window frame; Pappas, standing on the ground and observing the window frame, saw nothing wrong with it; Yahr and all the Bottling Company witnesses testified there was nothing noticeably wrong with the window frame. The top of the ladder had been placed against the window sill immediately prior to the accident and, while there is no evidence as to the object which struck Greco, there was testimony that immediately after the accident a portion of window frame was on the ground on one side of the ladder and a heavy iron sashweight on the other side of the ladder. The portion of window frame found on the ground gave the appearance of being extensively rotted and there were no nails in the wood, the nails apparently having "rusted out" from the wood.

---

where necessary, seal all knots and patch places, paint woodwork with two coats of paint, close stairs, varnish front door and paint metal door at the rear of the building.

Under the original lease, Yahr was clearly obligated to make repairs to the exterior of the building, including the window frames, but under the lease in existence at the time of accident Yahr had no such obligation. The record contains no evidence whatsoever that Yahr knew of any defect in the window frame and the testimony is clear that the condition of this window frame was a latent condition, a condition not discoverable by visual inspection and discoverable only by removing the frame from the sidewall or by a manual rapping thereon.

Yahr's duty was to warn business visitors or invitees of defects which were either known to him or which were discoverable by a reasonable inspection on his part.[4] Under the present factual situation Yahr assumed the duty to keep the exterior of this building, including window frames, in a reasonably safe condition and, therefore, if there were any defects known or discoverable by the exercise of reasonable care and diligence, he was obligated to warn any business visitor or invitee, such as the Maintenance Company and its employees, of such defects. Yahr, however, was not liable for a latent defect of which he was ignorant or which could not have been discovered in the exercise of reasonable care and diligence. In *Lentz v. Allentown Bobbin Works*, 291 Pa. 526, 140 A. 541, Lentz had entered into a written contract to put roofing on the defendant's two-story building and to respout the building. While the written contract was silent as to the manner of removal of the roof covering, actually the covering was removed by de-

---

[4] In view of Yahr's assumption of control of the exterior of the building evidenced by the contract with the Maintenance Company, Yahr cannot well take the position that he was an "owner out of possession" so far as the exterior of the building is concerned.

fendant's employees when and as requested by Lentz. The large roof consisted of rafters upon which rested inch boards that supported the covering. On the date of accident, Lentz, on the roof taking measurements for spouting, leaned over, placed his weight on his left hand near the eaves and a roof board broke causing him to fall to the ground. After the accident the board was found to be rotted—a fact previously unknown to Lentz or defendant—and its condition was not discoverable by a visual examination but only by the removal of the roof covering. This Court, reversing a judgment entered upon a verdict for Lentz, held that the defect was a latent defect for which the defendant was not liable. The Court stated (p. 530): "[The defendant] is only required to use ordinary care to protect those lawfully upon his premises . . . This degree of care does not place upon the property-owner the practically impossible task of testing every roof board before removal of the old covering to make way for the new". In *Miller v. Hickey,* 368 Pa. 317, 81 A. 2d 910, Hickey, owner of a three-story building, contracted with Miller's employer, an independent contractor, to " 'thoroughly scrape free of all loose and scaling particles . . . all metal work . . . including the fire escape' " and to apply two coats of paint thereto. On the date of accident, Miller was cleaning, brushing and scraping the fire escape and had progressed to a point where he decided he needed some paint; he then turned around, put his left hand on the outside rail of the fire escape, the rail gave way and Miller fell to the ground. After the accident, the pipe which formed the outside rail was found to be "corroded, almost rusted through; in bad condition." This Court reversed a judgment entered upon a verdict for Miller, holding that Miller had failed to prove that the defect could or should have been discovered

by a proper or reasonable inspection. Both *Lentz* and *Miller* presented factual situations clearly distinguishable from the instant situation.

In the present situation, the rotted condition of the window frame could not have been discovered by a visual inspection; the condition could have been readily discovered by manual tapping on the frame whereby both tactilely and aurally its condition would be established. Under the instant circumstances, was Yahr exercising reasonable care and diligence in not making this or some other type of inspection? There is no evidence whatsoever that Yahr *at any time* inspected the condition of the window frames either from within or without the building. This was an old building which had been owned by Yahr for eight years prior to the date of accident and the window frames, particularly by reason of the manner of construction of this particular window frame, were continually exposed to the elements. Granted that a visual or superficial examination of this window frame would not have revealed its defective condition, it was for the jury to decide under these particular circumstances whether such visual or superficial inspection was all that was required of Yahr. Whether Yahr's conduct or failure to inspect met the standard of reasonable care and diligence was a matter for the jury: *Blasi v. Bonnert,* 186 Pa. Superior Ct. 179, 142 A. 2d 752. Whether Yahr fulfilled his duty of maintaining the exterior of the building in a reasonably safe condition for the protection and safety of such invitees and business visitors as the Maintenance Company and its employees, and whether Yahr in failing to make more than a visual inspection, had exercised the care which a reasonable and prudent person would have exercised were matters peculiarly within the province of the jury to determine. As the Superior Court

said in *Blasi*, supra: "But the duty of reasonable care and diligence may in certain circumstances impose something more than a mere cursory observation. It is clear that landowners have a duty to correct or warn business visitors or invitees not only of defects which are obvious or observable but also those discoverable by a proper or reasonable inspection. Miller v. Hickey, supra, 368 Pa. 317, 325, 81 A. 2d 910; Coradi v. Sterling Oil Company, supra, 378 Pa. 68, 70, 71, 105 A. 2d 98; Philadelphia Ritz Carlton Co. v. Philadelphia, 282 Pa. 301, 304, 305, 127 A. 843. A latent defect by its very nature is not obvious; but the circumstances may be such as to lead a reasonable and prudent person to make an investigation. That which amounts to a reasonable inspection is a matter to be determined from the circumstances of each case."

Under the instant factual situation we cannot state as a matter of law that Yahr's conduct met the applicable standard of reasonable care and diligence, nor that Yahr in fulfillment of his duty could rely simply on a visual inspection of the frames. The court below properly refused Yahr's motion for judgment n.o.v. To have done otherwise would have amounted to an invasion of the province of the jury.

Lastly, Yahr argues that Greco was guilty of contributory negligence as a matter of law. Contributory negligence should not be declared to exist as a matter of law unless such negligence is so *clearly* revealed that reasonable individuals cannot disagree as to its existence: *Mazi v. McAnlis*, 365 Pa. 114, 119, 74 A. 2d 108; *Schofield v. Druschel*, 359 Pa. 630, 635, 59 A. 2d 919. Certainly the evidence in this record does not justify a declaration as a matter of law that Greco was contributorily negligent and the court below very properly submitted to the jury the question of contributory negligence.

## Greco v. Bottling Company

Section 343 of the Restatement, Torts provides: "Section 343. DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR. A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) *invites or permits them to enter or remain upon the land* without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility." (Emphasis supplied)

The court below justified the grant of a new trial as to the Bottling Company on the ground that an "invitation" or a "permission" to enter upon the premises could be implied from the fact that the Bottling Company's secretary-treasurer, on Monday, August 25, 1952, noticed that one side of the building had been painted and, therefore, she could have ascertained that the other side of the building was then being painted had she made inquiry. The court below said: ". . . [Greco] was invited upon the premises by the owner of the premises, Yahr, *without knowledge of the tenant, 7-Up Bottling Company,* and had the tenant remained away during the performance of the painting and repair work, we would be compelled to sustain the 7-Up verdict, or if a verdict was rendered against it, to grant judgment n.o.v. But we believe that when Miss Dorothy Tucker, Secretary-

Treasurer of 7-Up Bottling Company, returned to work on Monday and saw the college side painted, a reasonable inspection would have disclosed the painters upon the premises. While not clear and conclusive, we believe it presents a matter for the jury to determine and therefore we again refuse the motion for judgment n.o.v."

It was Yahr, not the Bottling Company, who contracted for the services of the Maintenance Company and expressly invited the Maintenance Company and its employees to enter upon the premises. No notice whatsoever of such invitation and permission granted by Yahr was given to the Bottling Company. The original entry upon the premises having been at the invitation and permission of Yahr, unless it can be shown that the Bottling Company had notice that the Maintenance Company and its employees were on the premises and that the Bottling Company acquiesced in their presence on the premises no liability can attach to the Bottling Company in the instant factual situation. From knowledge acquired by one of its officers that the building on one side *had* been painted and that someone *had* entered upon the premises for that purpose, Greco urges that the Bottling Company should either have become aware that the other side of the building was *then* being painted or it should have searched the premises to ascertain whether it was *then* being painted. Under the circumstances the Bottling Company was under no obligation to search the premises for the purpose of ascertaining the presence of the Maintenance Company's employees.

*Super v. West Penn Power Company*, 392 Pa. 159, 140 A. 2d 20 and *Stark v. Lehigh Foundaries, Inc.*, 388 Pa. 1, 130 A. 2d 123, illustrate the necessity that an owner or occupier of land have knowledge of the presence on its premises of business visitors, or in-

vitees, or licensees at locations reasonably to be anticipated by them. In *Super* the decedent, working as a lineman on a pole in the course of constructing a telephone line, was electrocuted when a high tension wire on the defendant power company's pole half a mile away fell on the telephone wire which had been attached to that pole. There was no evidence that the power company had authorized the placement of the telephone wire on the pole or had any knowledge of that fact. This Court, deciding that the evidence was insufficient to show any breach of duty on the power company, stated (p. 165): "Whether the Telephone Company and/or the Construction Company had secured permission from the Power Company to attach wires and cross-arms to the latter's poles was of vital importance in determining the negligence of the Power Company. A critical issue in determining the Power Company's liability was whether it 'had knowledge that a trespasser [the Telephone Company and/or the Construction Company] had done some act which affected the safety of the pole (Pole 1/117) and had failed to do some act to correct it.' In the absence of *any* evidence that the Power Company granted permission for the use of its poles or knew of such use, the instruction now suggested that the jury determine whether the use of such poles was by one in the status of a licensee is without any basis of fact in the record.

"Plaintiff had the burden of proving either that the Power Company knew or that it should have known of the placement of wires and cross-arms on its poles by the Construction and Telephone Companies. A review of the record indicates that there is no proof in this respect. The fact that the work had progressed over a two week period without objection from the Power Company does not, in the absence of any proof that the Power Company either knew or should

have known of such work, supply the element of permission by implication. The record shows simply that the Construction Company, acting at the direction of the Telephone Company, strung wires and cross-arms on the Power Company poles without any permission, express or implied, and the testimony falls far short of proof that either company occupied as to the Power Company the position of a licensee." In *Stark,* the possessor of land directed the placement of a crane underneath the high-powered line of a power company. Absent any evidence that the power company knew of the presence of the crane, this Court decided that there was no breach of duty on the part of the power company.

The evidence on this record fails to show the extension by the Bottling Company to the Maintenance Company and its employees, expressly or by implication, of an invitation or grant of permission to enter upon its premises. In the absence of such proof, liability cannot be fastened upon the Bottling Company in this situation.

Even though we deem the evidence insufficient to justify a finding that the Bottling Company had invited or permitted the Maintenance Company and its employees to enter upon the premises, the fact is that the court below did submit to the jury under proper and adequate instructions the question of the Bottling Company's liability and the jury returned a verdict in favor of the Bottling Company. We find no justification on this record to support a finding that such verdict was against either the evidence or the charge of the court. Furthermore, inadequacy of the verdict rendered against Yahr furnishes no ground for the granting of a new trial as to the Bottling Company. The court below in granting a new trial as against the Bottling Company abused its discretion.

Greco v. Maintenance Company

We have carefully reviewed the instant record to ascertain the presence or absence of proof of negligent conduct on the part of the Maintenance Company. The Maintenance Company had no notice actual or constructive, of the latent defective condition of this window frame. A visual inspection did not and could not have revealed the rotted condition of the frame; no further method of inspection was required of the Maintenance Company under the circumstances. Furthermore, there was no proof that the ladder itself was in any manner defective or that the failure to equip the ladder with pulleys or ropes to extend the sections thereof was either improper or in any way contributed to the happening of this accident. In the absence of proof of any such negligent conduct, it is difficult to understand why the court below permitted the jury to pass on the question of the Maintenance Company's negligence. Having permitted the jury to pass upon this question was error; to grant a new trial after the jury absolved the Maintenance Company from liability was to compound the error.

While the verdict may have been inadequate against Yahr, such inadequacy furnished no ground for the grant of a new trial as against the Maintenance Company. In a trespass action against two defendants, the fact that a jury returns a verdict inadequate in amount against one defendant and a verdict in favor of the other defendant, such inadequacy of verdict against the former does not, in itself, constitute a valid ground for the grant of a new trial as to the other defendant: *Fitzpatrick v. Sheppard,* 346 Pa. 240, 242, 29 A. 2d 475. In *Fitzpatrick* we said: "Did the court exceed its legal powers in granting the new trial as to Dr. McCombs? We think it did. The

plaintiff's position is clear. If she is required to proceed against Sheppard alone she fears that another jury might conclude that the doctor was at fault and Sheppard was not. That, however, is not a legal reason for requiring Dr. McCombs to stand trial again when he has been exonerated by a jury after trial without error". In granting a new trial as to the Maintenance Company the court below abused its discretion.

The ground assigned by the court below for the grant of a new trial as to Yahr was the inadequacy of the $15,000 verdict. In *Takac v. Bamford*, 370 Pa. 389, 395, 88 A. 2d 86, Mr. Justice (now Chief Justice) JONES stated: "The grant or refusal of a new trial for inadequacy of the verdict is a matter for the sound discretion of the trial court whose action will not be reversed on appeal except for a clear abuse of discretion such as where a new trial is refused when the verdict is so unreasonably low as to present a clear case of injustice." See also: *Paustenbaugh v. Ward Baking Company*, 374 Pa. 418, 420, 421, 97 A. 2d 816; *Carpenelli v. Scranton Bus Company*, 350 Pa. 184, 187, 38 A. 2d 44; *Elza v. Chovan*, 396 Pa. 112, 114, 152 A. 2d 238. On the posture of the present record, considering the extent of the medical expenses, the loss of earnings and the severity and probable permanency of injury, we cannot say that the court below grossly abused its discretion in finding inadequate the amount of the verdict, and, in the absence of such abuse of discretion, the action of the court below must stand.

One other matter must be considered because the court below assigned it as a ground for the grant of a new trial, believing that it contributed to the inadequacy of the verdict. On several occasions during the trial [which lasted from September 16 to September

24, 1957] Greco's chief trial counsel was absent from the courtroom. Such absence was caused by the fact that he had to be in attendance in the Federal Court in a matter in which he was personally involved. At no time did such counsel request the court for a recess nor was this matter ever brought to the attention of the court until *after the verdict* and at argument before the court below. Such circumstance does not and should not constitute a ground for a retrial of this case. The trial proceeded during the absence of the chief trial counsel, Greco being represented by an associate of the chief trial counsel; there is certainly nothing on this record to show that such associate was not a skilled, capable and able lawyer nor that his handling of the trial in any manner affected adversely Greco's rights. Counsel cannot walk out of the courtroom, leave the proceedings in the hands of an associate and then after an adverse or inadequate verdict complain that, if he had been present, the verdict would have been otherwise. This reason assigned for the grant of a new trial is utterly without merit.

The order of the court below in granting a new trial as to Yahr (Appeal No. 9 March Term 1960) is affirmed and the orders of the court below granting a new trial as to the Bottling Company and the Maintenance Company (Appeals Nos. 14 and 22 March Term 1960) are reversed and judgment directed to be entered on the verdicts in favor of the Bottling Company and the Maintenance Company and against Greco.