Kimbob, Inc., Appellant, *v.* Jumper.

560

Argued June 11, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Samuel Handler,* with him *Earl V. Compton, Leslie B. Handler,* and *Compton, Handler, Berman & Boswell,* for appellant.

*Jon F. LaFaver,* with him *Clinton R. Weidner,* for appellee.

Opinion by Watkins, J., September 12, 1963:

This is an appeal from a judgment entered on a verdict by the Court of Common Pleas of Cumberland County in favor of Paul F. Jumper, the defendant-appellee, and against Kimbob, Inc., plaintiff-appellant; and from the refusal of the plaintiff's motion for a new trial. The action arose out of a right angle collision at the intersection of two state highways, legislative routes Nos. 21066 and 21067, respectively, in Middlesex Township, Cumberland County, on December 23, 1961. The road was dry and visibility good. Route No. 21066 is an east-west highway and will be hereinafter referred to as highway A; and Route No. 21067 is a north-south highway, hereinafter referred to as highway B. Each is a macadam highway, twenty feet in width.

At the time of the collision there was a "stop" sign on highway A requiring traffic to stop before entering highway B. The sign had been erected by the Cumberland County sign foreman of the state highway department upon orders of the traffic control supervisor of the highway department. At the time of the trial the plaintiff was unable to comply with the ruling of the court below to prove authorization by the Secretary of Highways, but after the trial and at the time of the argument for a new trial, it had such proof.

At the time of the accident plaintiff's agent was driving a ten wheel, 6 cubic yard dump truck loaded with earth southwardly on route B, approaching the intersection of the highways at five to ten miles per hour. As the driver approached the intersection he had an unobstructed view of route A from the intersection to a point about 300 feet west. At this time he reached a point about 20 feet or less from the inter-

section of the pavement of the two roads; and at that time and place he saw no other vehicle within that distance. He continued to so look for a few more feet. His attention was required to the road in front because of a "bump" in the highway and the location of a utility pole. The highways in question were located in a rural area.

When the front end of the truck was 12 feet into the paved intersection the truck was struck by a 1947 Chevrolet automobile which was being driven by the defendant in an eastwardly direction on route A. The defendant's father-in-law and two children were passengers in the car. The defendant had driven past a "stop ahead" sign and the "stop" sign above described, without seeing either of them and so drove into the intersection and into collision with the truck without stopping.

The impact of the defendant's Chevrolet car when it struck the truck was so great that it pushed the rear wheels of this heavily loaded ten wheel, six cubic yard dump truck sideways, leaving a mark showing this on the highway.

The jury brought in a verdict for the defendant and the plaintiff moved for a new trial on the ground that the court below erred in submitting to the jury the question whether or not the stop sign had been authorized by the Secretary of Highways; that he erred in charging that the plaintiff had no right to rely on the stop sign if it was improperly erected; and that he was not entitled to a new trial because he now found the written authorization relative to the stop sign. The court below, although admitting that there was merit in the plaintiff's argument for a new trial for the above reasons, refused it on the ground that he should have granted defendant's motion for binding instructions because the plaintiff had convicted himself of contributory negligence as a matter of law, and so entered judgment on the verdict.

Highway B was an arterial or through highway by reason of the stop sign; highway A was a servient highway. It is indicated that the stop sign was legally installed but even if it were not, we agree with the contention of the plaintiff that it was error to leave this question of law to the jury. As President Judge KELLER said in *Com. v. Pahlman,* 118 Pa. Superior Ct. 175, 181, 179 A. 910 (1935): "So long as the prohibitions, etc. are legal it is of little concern to the motorist to know who authorized them, whether the State or local authorities; but the law may be summarized: If the signs appear on a state highway they are erected by the Secretary of Highways; if on any other road or street, by the local authorities." In effect, so far as motorists are concerned, the appearance on the highway of a stop sign creates a situation that requires reliance thereon. Even if the sign was without proper legal authority it has de facto existence, as any other interpretation would create positive highway hazards. In this case there was sufficient proof from which the court could have determined the sign to be de jure, as a matter of law, and certainly, if there was insufficient evidence to so decide, it was basic and reversible error to submit the question to the jury.

The court below also erred in charging the jury that if the sign had been illegally erected, the plaintiff had no right to rely on the stop sign. This would also mean that the defendant was justified in driving past the sign. This means that a motorist is going to be placed in the ridiculous position of stopping to inquire whether a stop sign is legally erected in order to have a duty to stop for it on the servient highway or a right to rely on it on an arterial highway. However, the court below indicates in the opinion denying a new trial that the contentions of the plaintiff have merit, by saying: "Even though there may be some merit to parts of the plaintiff's argument a new trial cannot be granted in

this case. Assuming that the stop sign was properly erected on Route 21066, an assumption most favorable to the plaintiff, the plaintiff has convicted himself of contributory negligence as a matter of law and a new trial cannot be granted in such case."

Under this theory of the case, the facts must be reviewed in the light most favorable to the plaintiff and the facts are so set forth herein.

The court below held that the plaintiff's driver traveled 32' without again looking to his right, was contributorily negligent as a matter of law. "Contributory negligence should not be declared to exist as a matter of law unless such negligence is so clearly revealed that reasonable individuals cannot disagree as to its existence:" *Greco v. 7-Up Bottling Co. of Pgh.*, 401 Pa. 434, 446, 165 A. 2d 5 (1960).

This is not such a case. The driver had testified and the court below overlooked it, that he continued to look for "a few feet" after he had passed the twenty foot point. From these facts, the defendant's car was more than 300 feet from the intersection and not in sight at the point the plaintiff last looked, and for the defendant to reach the intersection before the plaintiff cleared it, he must have been exceeding the speed limit, which the driver of the truck was not required to anticipate. The additional circumstances of the utility pole and the bump in this highway that required his full attention as he guided and controlled his heavy truck were sufficient additional circumstances to send the question to the jury. *Kline v. Kachmar*, 360 Pa. 396, 400, 61 A. 2d 825 (1948).

An automobilist may not drive blindly into an intersection even though he be on a highway governed by a stop sign or signal light but when he has looked as he did in this case he could scarcely have looked any more without endangering himself and his truck by ignoring what was directly in front of him. "A driver at

the wheel has other things to do besides training his gaze on potential adversaries driving by Stop signs. He has his own car to guide and control, . . . In like circumstances a law-abiding motorist is no more required to swivel his head like a ventriloquist's dummy than a pedestrian." *Taylor v. Mountz,* 387 Pa. 321, 326, 327, 127 A. 2d 730 (1956).

We can well apply the reasoning of *Cericola v. Redmon,* 182 Pa. Superior Ct. 19, 124 A. 2d 417 (1956), where Judge WOODSIDE, speaking for this Court, said at pages 22, 23:

"The question of contributory negligence was also for the jury. The plaintiffs were on a through highway. The driver on a through highway has the right to assume that persons approaching on intersecting streets will obey a stop sign and yield the right of way as required by the Vehicle Code . . . .

"One on a through street is under no obligation to look all the way down the 'Stop' street to ascertain whether or not some motorist is coming at a reckless rate of speed that will carry him across the intersection in defiance of the 'Stop' sign. . . .

"Cericola had the right to assume that Redmon would not violate the law by driving into the intersection when Cericola had the right of way. Acting upon this assumption was not negligent . . . 'The assumption that another driver will obey the traffic rules cannot be adjudged negligent unless the person making the assumption has timely warning that his confidence in the other's lawabidingness is misplaced.' . . .

"Traffic lights and 'Stop' signs are installed to facilitate the flow of traffic. When one has the right of way by virtue of being on a through street or having a green light he must not be held to the exact degree of care that would have been required of him had there been no light or stop sign in his favor at the intersection. To hold otherwise would thwart the purpose of

through highways and traffic lights to facilitate the flow of traffic. . . .

"Cericola did not have a legal right to go blindly into the intersection regardless of other vehicles that might have already been within it. But, this he did not do. As he approached the intersection he did look for traffic and saw nothing approaching. Under the circumstances of this case the question of contributory negligence was for the jury. . . ." See also: *Nolan v. Webber,* 189 Pa. Superior Ct. 68, 149 A. 2d 184 (1959).

Judgment is reversed and a new trial granted.