384 A.2d 1274

**Alicia M. STACY, Appellant,**

**v.**

**THROWER TRUCKING, INC., a corporation, and Charles G. Kelley, an Individual.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided April 13, 1978.

152

Thomas H. Welsh, Pittsburgh, for appellant.

W. Arch W. Irvin, Jr., Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant raises the following contentions: (1) the lower court improperly charged the jury on both the "assured clear distance" rule and the "sudden emergency" rule, (2) the jury verdict was against the law, (3) the verdict was against the

weight of the evidence, (4) the incontrovertible physical facts required a verdict in appellant's favor, (5) the lower court erred in refusing to read certain requested instructions, and (6) the lower court improperly allowed the jury to consider the testimony of two eyewitnesses who testified on appellees' behalf. Because these contentions lack merit, we affirm the judgment entered by the lower court.

On April 15, 1974, appellant filed a summons and complaint in trespass against appellee Charles Kelley, a truckdriver, and appellee Thrower Trucking Company, Kelley's employer. The complaint alleged that on May 11, 1972, Kelley negligently operated a cement mixer which collided with appellant's vehicle on Route 8 in Richland Township, Allegheny County. As a consequence, appellant suffered severe injuries and her vehicle was extensively damaged. The complaint also alleged that appellee Thrower Trucking Company was liable under the doctrine of respondeat superior for the negligent conduct of its employee. On January 14, 1976, a jury trial commenced in the Allegheny County Court of Common Pleas. At trial, the parties produced the following testimony.

Geoffrey D. Gordon, called on appellant's behalf, testified that on May 11, 1972, at about 9:30 a. m., he was driving a passenger automobile in the northbound passing lane of Route 8. Route 8 is an undivided four lane highway passing through Richland Township; two lanes of travel go north, two south. Gordon, driving at a speed of 50 miles per hour, was 4 or 5 car lengths behind appellant's car which was travelling in the northbound curb lane at about 50 miles per hour or a little slower. As his car passed over the top of a hill on Highway 8, Gordon observed a cement mixer truck travelling in the southbound curb lane. The cement mixer was at the top of a hill opposite Gordon's position; about three-tenths of a mile separated these two points. In between the two hills, the road levelled out. On his right, Gordon observed a station wagon stopped at the end of an entrance ramp which led northwesterly from Bakerstown Road into Route 8. This station wagon proceeded across

four lanes of traffic and turned left into the southbound curb lane, immediately in front of the cement mixer. When the station wagon moved into the southbound curb lane, the cement mixer veered into the southbound passing lane and then swerved back toward the curb lane. At this point, the truck toppled over, slid into the northbound lanes, and ultimately smashed into appellant's vehicle which had come to a complete halt. The force of the truck's impact pushed appellant's car a distance of about 50 feet. Although Gordon testified that appellant had no opportunity to avoid the collision, he himself escaped contact by swerving around the cement mixer and appellant's vehicle. As Gordon executed this maneuver, he observed the station wagon accelerate and leave the accident scene.[1]

Appellant also presented the testimony of Dr. James Romualdi, a professor of civil engineering at Carnegie-Mellon University. On the basis of his examination of a police report, several depositions, photographs, and skid marks, Romualdi determined that the cement mixer initially skidded 140 feet after applying its brakes and before flipping over, 127 more feet before it hit appellant's car, and 58 more feet after the collision. The cement mixer also demolished thirteen guardrails. Dr. Romualdi concluded that prior to skidding, the cement mixer must have been travelling at least 58 miles per hour, and, more likely, was probably travelling at 65 miles per hour.

Appellant's testimony concluded her case on the issue of liability. According to appellant, she was travelling about 45–50 miles per hour, well below the posted 55 mile per hour speed limit, when she saw the cement mixer veer back and forth and finally topple. She applied her brakes and came to a stop, but could only watch helplessly as the cement mixer slid downhill and crashed into her car.

Appellee Charles Kelley testified that he was the operator of the cement mixer at the time of the accident. The mixer, which carried a full load of gravel, sand, and dry cement,

---

1. The identity of the operator of this car unfortunately remains a mystery.

weighed approximately 70,000 pounds. As he started to descend the hill, Kelley was driving the truck at a speed of 45 miles per hour in the southbound curb lane of Route 8; no vehicles were immediately in front of or in back of his truck. After descending about half way down the hill, Kelley observed a light-colored Chevrolet approach the end of the entrance ramp which led into the northbound curb lane. Kelley realized that cars could legally cross into southbound lanes from this ramp. Because Kelley was not certain that this vehicle would stop completely, he lightly applied his brakes and slowed to around 35–40 miles per hour. When Kelley saw the Chevrolet come to a complete stop at the end of the entrance ramp, he shifted his attention back to the road area directly in front of him. At this point, the Chevrolet started to cross the four lane highway and to enter the southbound curb lane immediately in front of Kelley's path. Kelley quickly and forcibly applied his brakes, but soon realized that braking alone would not prevent impact with the Chevrolet. Therefore, Kelley swerved the cement mixer into the southbound passing lane. This rapid direction change caused the load on top of the cement mixer to shift and the truck to lean. In order to compensate for this leaning, Kelley swerved the truck back towards the southbound curb lane. However, the truck turned over onto its side and crossed over into the northbound lanes where it collided with appellant's car.

The testimony of Robert Bennett and Donald Rutkaukas, both employees of a car dealership located near the entrance ramp, completed the defense presentation on the issue of liability. Both Bennett and Rutkaukas personally witnessed the accident. Bennett observed the cement mixer as it started its descent from the hill; he estimated the truck's speed at 45–50 miles per hour, within the 50 mile per hour speed limit and the normal rate of travel on Route 8. Bennett next observed a beige Chevelle pull into the southbound lane in front of the cement mixer. Realizing that an accident was imminent, Bennett yelled: "Look out." At this moment, the cement mixer changed lanes and managed

to avoid hitting the Chevelle; the Chevelle sped away. Seconds after the accident, Bennett perceived the Chevelle stopped alongside the southbound curb lane of Route 8. After a momentary stop, the Chevelle accelerated and left the accident scene. Rutkaukas corroborated Bennett's testimony in all material respects, including an estimate of the truck's speed at 45–50 miles per hour.

On January 21, 1976, the jury returned a verdict for appellees. On October 27, 1976, the lower court denied appellant's motions for a new trial. This appeal followed.

 Appellant first contends that the lower court erred in charging the jury on both the "assured clear distance" rule and the "sudden emergency" rule. In *Reifel v. Hershey Estates,* 222 Pa.Super. 212, 295 A.2d 138 (1972), our Court surveyed the interrelationship between these two fundamental vehicular tort law principles. The "assured clear distance rule", originally a common law principle which the Vehicle Code now codifies,[2] provides that "no person shall drive any vehicle, upon a highway . . . at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." This rule, however, does not apply when "*a sudden and clear emergency arises, unforeseeable to a [driver] and of such severity as to put a driver in instantaneous disability,* . . .. The emergency, however, must be clear and sudden to such a degree that reasonable men would not differ that the driver was acting under such an emergency. But, where the evidence leaves some doubt as to whether an emergency situation existed, wholly independent and not created by plaintiff's own acts of negligence or recklessness, it is incumbent upon the trial judge to submit the issue to the jury for

2. *See* The Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1, eff. July 1, 1977; 75 Pa.C.S. § 3361. At the time of the instant accident, The Vehicle Code, Act of April 29, 1959, P.L. 58, § 1002; 75 P.S. § 1002 delineated the "assured clear distance" rule. Hereinafter, all citations to The Vehicle Code will refer to the Act of April 29, 1959, which defined the rules regulating the conduct of motor vehicle operators in our Commonwealth at the time of the accident involved in the case at bar.

its determination." *supra* 222 Pa.Super. at 215–216, 295 A.2d at 140 (Emphasis in original). *See also Liuzzo v. McKay,* 396 Pa. 183, 152 A.2d 265 (1959); *Unangst v. Whitehouse,* 235 Pa.Super. 458, 344 A.2d 695 (1975). A party who pleads the existence of an emergency bears the burden of proof on this allegation. Moreover, if a party's own negligence creates the emergency, then reliance on the rule is precluded. See *Chadwick v. Popadick,* 399 Pa. 88, 159 A.2d 907 (1960).

In the instant case, the lower court instructed the jury on both the "assured clear distance" rule[3] and the "sudden emergency" doctrine.[4] Appellant does not contend that the lower court's charge on these points misrepresented the statement of the substance and interrelationship of these two doctrines contained in *Reifel v. Hershey Estates, supra.* Nor does appellant dispute the propriety of giving an "assured clear distance" instruction. Instead, appellant argues that appellee Kelley's own testimony and Dr. Romauldi's expert opinion testimony conclusively established that Kelley's negligence created the existence of the emergency situation, and, consequently, appellee Kelley forfeited any right to invoke the protection of the "sudden emergency" doctrine. Therefore, we must determine whether the testimony conclusively establishes that appellee Kelley's own negligence created the sudden emergency.

First, appellant claims that appellee Kelley in effect admitted his own negligence when he gave the follow-

3. In regard to this rule, the lower court charged: "It is required . . . that he [driver] operate at a proper and prudent speed in consideration of all of the conditions of the road or traffic existing at the time and that he operate a vehicle or his vehicle in such a manner as to be able to bring it to a stop at a sign of danger within the assured clear distance ahead."

4. The lower court instructed the jury: "There is another rule that if a driver is confronted with a sudden emergency caused by someone else and not of his own doing, he is not then held to that same degree of care to which we are held ordinarily, as I related to you already. Those degrees of care and those things which you are required to do in operating a vehicle may be lessened by your being confronted with a sudden emergency which was not of your own making."

ing testimony: "I glanced at that intersection. I always check the intersection to see if there is anyone in the intersection. I saw this car approaching up the ramp. He come up and stopped so I paid no more attention to him. I just more or less kept on going.

"The next thing I noticed he pulled out from the stop sign and was making a turn that he was going in a southerly direction." (Trial Transcript 147–48) Appellee Kelley thus admitted that he failed to observe continuously the car on the entrance ramp. However, we believe that appellant reads the record much too narrowly. If we view as a whole all the evidence pertaining to the emergence of the car from the entrance ramp into the path of the cement mixer, the following factual sequence emerges. As Kelley started to drive down the hill in the southbound curb lane of Route 8, a four lane highway, he observed a car approach the end of an entrance ramp which ran in a northwesterly direction and connected with the northbound curb lane of Route 8. Uncertain as to whether this car would come to a complete stop, Kelley prudently braked and reduced his speed. When Kelley ascertained that the car had in fact stopped, he released his brakes and glanced straight ahead in order to make sure his forward path was unobstructed. Moments after Kelley glanced downhill, the car on the entrance ramp proceeded to cross four lanes of traffic and to enter the southbound curb lane, immediately in front of the cement mixer, thus precipitating the unfortunate chain of events which culminated in the instant accident. Given these circumstances, we cannot say that Kelley acted imprudently in momentarily shifting his observation from a stopped car on a side entrance ramp four lanes away back to the main path of travel. Indeed, adoption of appellant's position would charge appellee Kelley with a duty to keep his attention glued to entrance ramps along the opposite side of the road, regardless of developments immediately before and behind his truck. We will not impose such an inflexible duty on a driver. See Smith v. United News Co., 413 Pa. 243, 196 A.2d 302 (1964); Hoffman v. George, 155 Pa.Super. 501, 38 A.2d

504 (1944). Therefore, Kelley's statement that he paid no more attention to the car on the entrance ramp after it stopped, does not, standing alone, conclusively establish his negligence.

Appellant also believes that Dr. Romauldi's expert opinion testimony irrefutably demonstrates that Kelley was speeding as he descended the hill on Route 8. Again, appellant attributes too much significance to an isolated portion of the record. Two disinterested eyewitnesses and Kelley all testified that the speed of the cement mixer did not exceed the legal speed limit.[5] By contrast, Dr. Romauldi could only reconstruct the accident on the basis of skid marks, photographs, depositions, and a police report. The jury was free to find the testimony of the three eyewitnesses more reliable than the expert's opinion testimony. *In re Jones,* 432 Pa. 44, 246 A.2d 356 (1968); *Reardon v. Meehan,* 424 Pa. 460, 227 A.2d 667 (1960); *Freed v. Priore,* 247 Pa.Super. 418, 372 A.2d 895 (1977).[6]

5. There is a conflict in the testimony as to what the speed limit actually was. Appellant testified the speed limit was 55 miles per hour, Bennett and Rutkaukas that the limit was 50 miles per hour. Without resolving this conflict, we note that appellee and the two eyewitnesses all testified that Kelley was travelling at a speed equal to or lower than 50 miles per hour.

6. In a related contention, appellant argues that the incontrovertible physical facts prove beyond doubt that appellee Kelley exceeded the speed limit. We will apply the incontrovertible physical facts rule with great caution and only when the facts are indisputable. *See Densler v. Metropolitan Edison Co.,* 235 Pa.Super. 585, 345 A.2d 758 (1975); *Algeo v. Pittsburgh Railways Co.,* 202 Pa.Super. 548, 198 A.2d 415 (1964). If a fact is based on oral testimony, we will not hold it incontrovertible unless "it receives the imprimatur of a jury's acceptance. . . ." *Vereb v. Markowitz,* 379 Pa. 344, 348, 108 A.2d 774, 776 (1954). In *Ropele v. Stewart,* 185 Pa.Super. 522, 528–29, 137 A.2d 895, 898 (1958), we stated that "[w]here the testimony of witnesses is needed in order to apply the incontrovertible physical facts to the issue in the case the rule itself is inapplicable. *Callahan v. A. Wishart & Sons Co.,* 365 Pa. 498, 502, 76 A.2d 386 (1950); *Streilein v. Vogel,* 363 Pa. 379, 69 A.2d 97 (1949). Incontrovertible physical facts are never established by oral evidence as to position of movable objects." In the instant case, Dr. Romauldi's oral opinion testimony constituted the only basis for the alleged existence of the physical facts regarding the distances travelled by the cement mixer and the only basis for the application of these facts

Because the evidence relied upon by appellant does not conclusively establish that appellee Kelley's negligence created the emergency situation in the instant case, we refuse to hold that the lower court erred in instructing the jury on the issue of "sudden emergency."[7] At most, conflicting testimony may have left some doubt in the factfinder's mind as to whether an emergency situation existed which was not created by appellee Kelley's own negligence. In this situation, the trial court had a *duty* to submit the issue of the possible applicability of the "sudden emergency" doctrine to the jury for its resolution. *Reifel v. Hershey Estates, supra,* 222 Pa.Super. at 215, 295 A.2d at 139.

██ Appellant next contends that the trial court erroneously refused to read three proffered instructions. In point number eight, appellant asked the lower court to charge: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act, whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." According to appellant, there was a likelihood that the car on the entrance ramp would pull out precipitately in front of the cement mixer. To the contrary, there was no evidence that it was likely that the car would pull out in front of appellee Kelley.

to the issue of speeding. Therefore, the incontrovertible physical facts rule has no bearing on the case at bar. *See also Reese v. Hughes,* 223 Pa.Super. 311, 299 A.2d 653 (1973) (matters which involve the existence of varying and estimated distances and speeds and which depend on oral testimony are peculiarly within the province of the factfinder and are not covered by the incontrovertible physical facts rule.)

7. This holding necessarily forecloses two parallel claims raised by appellant: (1) the lower court erred in refusing to give binding instructions on the issue of appellee Kelley's negligence, and (2) the jury's verdict was against the weight of the evidence. We cannot say as a matter of law that appellee Kelley acted negligently and caused the accident. Nor can we say that " . . . the jury's verdict is so contrary to the evidence as to shock one's sense of justice and [to require] a new trial . . . so that right might be given another opportunity to prevail." *Burrell v. Philadelphia Elec. Co.,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970); *Keba v. Pickett,* 434 Pa. 148, 252 A.2d 675 (1969).

Indeed, Kelley, a driver on a through highway, could properly assume that the car which had stopped on the entrance ramp would yield the right of way. The Vehicle Code, supra; 75 P.S. § 1014. *See Enfield v. Stout,* 400 Pa. 6, 161 A.2d 22 (1960). Therefore, the lower court properly rejected this suggested charge.

■ Appellant also contends that the lower court failed to charge the jury adequately on the duty of an automobile operator to keep his vehicle under constant and perfect control and to observe the speed limit, lest the operator forfeit his right of way. Appellant relies on statutes and cases governing the duty of an automobile operator entering an intersection to support his request for these points for charge. For example, appellant cites § 1013 of the Motor Vehicle Code.[8] However, § 1013 only pertains when two vehicles approach or enter an intersection at approximately the same time. Section 1014 of the Vehicle Code[9] governs the situation in which a driver of a vehicle attempts to enter a through highway or stop intersection. Unlike § 1013, § 1014 does not expressly specify that speeding results in forfeiture of the right of way. Instead, § 1014 merely requires the highway driver to operate his vehicle with due regard for the safety of vehicles entering the highway. Because § 1014 and not § 1013 controls this case, the lower court properly refused to charge on a statutory duty inapplicable to the instant case and more burdensome to the highway operator than that imposed by the proper statutory obligation. Moreover, we note that the lower court did charge the jury that appellee Kelley had a duty to operate his vehicle in such a prudent fashion that he would be able to stop his vehicle safely at a sign of danger within the assured clear distance ahead[10] and that appellee had a duty

8. The Vehicle Code, supra; 75 P.S. § 1013.

9. The Vehicle Code, supra; 75 P.S. § 1014.

10. See footnote 3, supra, for the text of this charge.

to be especially watchful and careful of cars entering the highway. The court also added that the jury could consider a finding of speeding as evidence of a driver's negligence.[11] Reading, as we must, the charge as a whole, *McCay v. Philadelphia Elec. Co.,* 447 Pa. 490, 291 A.2d 759 (1972), we believe that the lower court adequately defined the standard of care of a motor vehicle operator driving on the highway. *See* The Vehicle Code, supra; 75 P.S. § 1014.

■ Appellant's last contention is that the lower court improperly allowed two eyewitnesses, Bennett and Rutkaukas, to testify on appellees' behalf. More specifically, appellant argues that appellees did not timely disclose the existence and identity of these two eyewitnesses, despite appellant's request for the disclosure of liability witnesses in interrogatories. We may dispose of this contention summarily. First, appellant raised no objection at any time during trial to the testimony of these two eyewitnesses. Therefore, appellant may not press this contention for the first time, before us. *Commonwealth v. National Federation of the Blind,* 471 Pa. 529, 370 A.2d 732 (1977). Also, a perusal of the record reveals that appellees did list Bennett and Rutkaukas as liability witnesses in supplemental pre-trial statements on July 27, 1975, and December 27, 1975. Accordingly, this final contention has no merit.

Because appellant has not advanced any meritorious claims, we affirm the judgment entered in favor of appellees.

Judgment affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

11. Appellant has not contended, either before the lower court or before our Court, that speeding on a highway must be considered negligence per se.