424 A.2d 1370

**Mary Joyce POTENBURG, Administratrix of the Estate of Joseph J. Potenburg, Deceased**

v.

**Robert M. VARNER and Carl A. Petka.**

**Appeal of Carl A. PETKA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed Jan. 30, 1981.

Petition for Allowance of Appeal Denied April 20, 1981.

20

J. Joseph Herring, Jr., Media, for appellant.

Daniel L. Thistle, Philadelphia, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

HESTER, Judge:

This is an appeal from the Order of the Court of Common Pleas of Delaware County denying appellant's post trial motions. The procedural history and facts relevant to the issue on appeal are as follows:

On November 6, 1973, appellee Potenburg's decedent was killed after being struck successively by two vehicles while he was walking on Interstate 95 near the Kerlin Street entrance ramp in Chester, Delaware County. The record shows that appellee Varner drove up the Kerlin Street entrance ramp at approximately 8:00 p. m. It was a dark, clear evening and the road was dry. After determining that it was safe to enter Interstate 95, he started to move forward. After traveling only a short distance, he saw what appeared to be a person standing in the center lane of the three south bound lanes. He attempted to stop but was unable to avoid striking appellee Potenburg's decedent.

The impact knocked decedent into the left south bound passing lane, where he laid motionless. At that time, cars approaching the accident scene began braking rapidly to avoid appellee Varner's vehicle and the motionless body.

A short time transpired when appellant Petka approached the scene, travelling at about 50–60 miles an hour, with the speed limit being 60 miles per hour. He observed the vehicles ahead applying their brakes, swerving and skidding. The skidding cars were about ten to fifteen car lengths ahead of him. There was insufficient room to move from the center lane to the right lane, so he steered his vehicle

into the left or south bound passing lane. Appellant succeeded in going around appellee Varner's vehicle, but ran over Joseph Potenburg, who died later that evening as a result of the injuries received.

On November 28, 1978, a jury rendered a verdict in favor of appellee Potenburg in the wrongful death action in the sum of $93,500.00, and $35,000.00 in the survival action, against appellant Petka only. Appellant Petka filed motions for a new trial, a new trial on damages only, judgment notwithstanding the verdict, or remittitur. Following the denial of appellant's motions, this timely appeal followed.

▮▮ Appellant contends the trial court erred in its charge to the jury on the doctrine of sudden emergency. We have held that a driver confronted with a sudden emergency not of his or her own making is not guilty of negligence merely because it may appear thereafter that if he or she had acted differently, an accident may have been avoided. All that is required is an honest exercise of judgment even if not the best judgment under the circumstances. *Stacy v. Thrower Trucking, Inc.*, 253 Pa.Super. 150, 384 A.2d 1274 (1978); *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978). The doctrine applies where a driver is confronted with an object that suddenly moves into his assured clear distance ahead. *Sullivan v. Wolson*, 262 Pa.Super. 397, 396 A.2d 1230 (1979). Where the facts do not conclusively establish the existence of a sudden emergency, it is proper to charge the jury on both the assured clear distance rule and the sudden emergency doctrine in order that the jury has the applicable law to apply to the facts as they find them. *Stacy v. Thrower Trucking, Inc.*, supra. The relevant portion of the questioned charge reads as follows:

"Now the Defendant Petka claims as his defense a doctrine known in the law as the doctrine of Sudden Emergency; that is, he was confronted with a situation of the first accident so suddenly that he reacted to the situation the best way he could, not necessarily using normal judgment, and so ran over the Deceased, Joseph Potenburg.

Now there is contention and it is urged by the Defendant, Petka, *that due to the negligent conduct of either the Defendant Varner, or the Deceased Plaintiff, Joseph Potenburg, or both*, he was faced at the time of the accident with a very sudden emergency not brought about by any conduct of his own . . . ."

■ Appellant argues that this charge directs that negligent conduct on the part of the other parties alone or jointly had to create the emergency in order for the jury to consider the Sudden Emergency Doctrine. The confusion of the jury in this regard was further illustrated by the fact that they had to be charged a second time as to the sudden emergency doctrine. The use of the words "negligent conduct" in the charge was improper and totally misleading. *Lewis v. Mellor*, supra; *Stacy v. Thrower Trucking*, supra. We agree that the charge, as given on both occasions, precluded the jury from applying the doctrine in judging the conduct of appellant Petka unless the negligence of one of the other parties created the emergency.

We therefore reverse the order of the trial court and remand for a new trial as to Petka only. Nothing in the record suggests that the jury's verdict in favor of Varner was affected by the misleading charge as to Petka. Rather, the verdict demonstrates either that the jury found Varner not negligent or that they found the decedent to have been contributorily negligent. The verdict in favor of Varner is not contrary to the evidence.

■ A defendant whom the jury has exculpated should not be subject to a new trial unless there was trial error as to him. *Sternberg v. Dixon*, 411 Pa. 543, 192 A.2d 359 (1963), and *Greco v. 7–Up Bottling Company of Pittsburgh*, 401 Pa. 434, 165 A.2d 5 (1960).

Order reversed and case remanded for a new trial as to appellant Petka only.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I dissent because I believe that under the Pennsylvania cases the court's charge on the sudden emergency doctrine was proper.

In its charge the court stated:

Now, the defendant Petka claims as his defense a doctrine known in the law as the Doctrine of Sudden Emergency; that is he was confronted with the situation of the first accident so suddenly that he reacted in the best way he could, not necessarily using normal judgment, and so ran over the deceased Joseph Potenburg.

Now, it is the contention, and it is urged by the defendant Petka, that due to the negligent conduct of either the defendant Varner or the deceased plaintiff Joseph Potenburg, or both, he was faced at the time of the accident with a sudden emergency not brought about by any conduct of his own.

This rule of Sudden Emergency stated in its best form is that where one finds himself in a position of danger which was not the result of his own negligence, he will not be held responsible if he makes a mistake of judgment in extricating himself from the dangerous situation in which he finds himself.

One confronted by a sudden perilous situation not created by some fault of his own, is not required to exercise the highest or even the ordinary degree of judgment.

One may be legally blameless in spite of an error in judgment where another has placed him in a situation where it would be unreasonable to hold him to the exercise of cool and correct judgment.

The defendant Petka seeks to have you apply this principle to this case because of the possibility that you might conclude that he should have acted differently when he came to the accident scene or came upon it. He contends that under the circumstances, you should not hold him to strict accountability for accuracy and judgment, because in his view the emergency was sudden and not created by any wrongful act on his part.

However, the Rule comes to the aid of any party to whom it applies and it will apply to such as claim it if they come within its scope and definition.

Any party who is free of fault in bringing about a perilous situation may claim the advantage of the doctrine. To make use of the rule in one's favor, the party involving must not have caused the hazardous condition by his own prior negligence.

When one claims that he was subject to a sudden emergency, the doctrine will not come to his rescue if he was himself so reckless, negligent or careless as to have caused the situation to arise or to have caused or to have brought about the incident or result when he might have avoided it.

In such case, had he been careful, the peril would not have arisen in the first place. The question then, whether the defendant Petka is entitled to the operation of this doctrine, is one for you to decide.

(N.T., pp. 347a, 348a, 349a)

The portion of the charge to which the appellant objects is:

Now, it is the contention, and it is urged by the Defendant, Petka, that due to the negligent conduct of either the Defendant, Varner, or the deceased, Plaintiff, Joseph Potenburg, or both, he (Petka) was faced at the time of the accident with a sudden emergency not brought about by any conduct of his own.

(N.T., p. 347)

This statement, however, was merely a reflection of the evidence before the jury. As the lower court stated in its opinion:

Petka [appellant] ignores the primary acts which created this incident. It was [appellant's] action in being in the center lane of this unlighted Interstate highway at night, and without carrying or wearing anything to reveal or forewarn of his existence, coupled with the sudden braking of Varner's vehicle that generated the entire chain of

events, wherein Petka maneuvered his vehicle to the left passing lane, passing all other stopped vehicles.

Even if we read the excepted portion of the charge as a restriction of the application of the emergency doctrine to the precedent negligent conduct of Varner, Potenburg or both, it did not, however, render the charge defective or improper. As we pointed out in *Galizia v. McKim*, 210 Pa.Super. 144, 149, 232 A.2d 213, 216 (1967), "the charge must be read as a whole and if, when so viewed, it is not misleading, then it is not substantially erroneous and will not justify a new trial."

The lower court charge in the instant case, when read as a whole, clearly does not justify a new trial.

I adhere to this position in the instant case even though I believe our courts have failed to properly distinguish between convenient legal descriptions of the sudden emergency doctrine and a proper instruction for the jury on this doctrine. For example, our cases have approved emergency doctrine charges which describe the standard of care where one is met with an emergency as being the exercise of "honest" judgment, or one which excuses "errors in judgment" and "mistakes in judgment." The approved charge goes so far as to excuse the actor from a duty of ordinary care. *See Hartman v. Gieraltowski*, 198 Pa.Super. 316, 181 A.2d 688 (1962); *Stacy v. Thrower Trucking, Inc.*, 253 Pa.Super. 150, 384 A.2d 1274 (1978); *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978).

Negligence is the absence of the ordinary care which a reasonably prudent person would exercise in the circumstances presented. In an emergency situation, what we really have is an additional circumstance, i. e., an emergency (brake failure, for example) necessitating hastened action. "It thus involves nothing more than an application of the general standard of reasonable care to a specific situation," *Lewis v. Mellor, supra*, 259 Pa.Super. at 526, 393 A.2d 941, and "the standard of care is the same in every negligence case, only the circumstances differ." *Eichman v. Dennis*, 225 F.Supp. 531, 533 (E.D.Pa.1963) (applying Pennsylvania

law). *See also Westerman v. Stout*, 232 Pa.Super. 195, 200, 335 A.2d 741, 744 (1975) where we held that the jury must determine "that the party confronted with the emergency acted in a reasonable manner in light of the circumstances."

It would seem the appropriate charge, therefore, is still one of reasonable care under the circumstances and the fact that one is involved in an emergency situation not of his own creation simply presents additional circumstances which the jury must consider in determining whether or not the actor acted reasonably.[1]

The term, "honest exercise of judgment," introduced in *Polonofsky v. Dobrosky*, 313 Pa. 73, 76, 169 A. 93, 94 (1933), is one of the many expressions which have been used to describe the measure or degree of care which an individual is required to exercise under varying circumstances to meet the test of due or reasonable care. In my view, this expression together with language which excuses "mistakes" in judgment and "errors" in judgment fails to carry an adequate explanation of "reasonable care" required in an emergency situation. Where the jury is being instructed on the law, the language must be imperative and the jury should have no latitude of interpretation in the law. *Lobalzo v. Varoli*, 409 Pa. 15, 19, 185 A.2d 557, 560 (1962).

1. A similar problem is presented when we analyze the "highest degree of care" standard. Prosser has this to say on the point:

> The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it. Those who deal with instrumentalities that are known to be dangerous, such as high tension electricity, gas, explosives, or elevators, must exercise a great amount of care because the risk is great.

> Although the language used by the courts sometimes seems to indicate that a special standard is being applied, it would appear that none of these cases should logically call for any departure from the usual formula. What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding only an increased amount of care.

Prosser, Torts (4th Ed.) § 34 at 180–181. *See also Sapienza v. Lankanau Hospital*, 2 Phila.C.R. 510 (1979).

To the average layperson the term, "honest exercise of judgment," for example, will have variations in meaning. Without an adequate explanation of the term a jury might naturally interpret it to mean that the defendant acted without culpability or evil intent. In sum, I believe the charge as approved by our cases can be fairly understood to excuse any post-emergency act and eliminate any reasonable standard of care.[2]

I have reviewed the appellant's other contentions and find them to be without merit. I would therefore affirm the order of the lower court denying appellant's post trial motions.

2. To alleviate many of the problems referred to above, the Mississippi Supreme Court abolished the sudden emergency doctrine in *Knapp v. Stanford*, Nos. 51, 749, 392 So.2d 196 (Miss.1980). The Court's reasoning is insightful:

> During the past 25 years, this court has considered approximately 27 cases involving the propriety of the so-called "sudden emergency" instruction either in its language or applicability. Out of those cases, approximately 20 have been reversed because the instruction was erroneous in some manner. The hazard of relying on the doctrine of "sudden emergency" is the tendency to elevate its principles about what is required to be proven in a negligence action. Even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed sudden emergency. Also, it tends to confuse the principle of comparative negligence that is well ingrained in the jurisprudence of this state.

The court continued:

> The same rules of negligence should apply to all circumstances in a negligence action. The emergency rule is not an exception to the general rule requiring reasonable care. The existence of an emergency is simply on the circumstances contemplated by the normal standard of care in seeking to ascertain whether the defendant acted as an ordinary prudent and careful person would have under the same circumstances. While it is said that one confronted with a sudden emergency is not held to the same degree of care as one who had an opportunity to deliberate, this does not mean that any different standard is to be applied than in negligence cases generally.

> We conclude, therefore, that the orderly disposal of negligence cases would be best served by applying uniform principles of negligence under all circumstances. The test is whether the actor being charged with negligence in any circumstance acted as a reasonable and prudent person would have acted under the same or similar circumstances.